[KINGS SPECIAL TERM, May 20, 1853.    *S. B. Strong*, Justice.]

---

In the matter of LUCIUS N. BANGS, receiver, &c. of the Genesee Mutual Insurance Company, *respondent*, on the petition of ELIJAH GRAY and others, *appellants*.

A member of a mutual insurance company is not liable to assessments, upon his premium note, to meet deficiencies of means arising from a failure to collect of other members.

When a member has paid, towards any loss or expenses, in proportion to the amount which his deposit note bears to the other deposit notes, legally assessable, his liability to assessment in respect to such loss or expenses, is discharged.

He cannot be assessed beyond such proportion, without a violation of the charter of the corporation; and no such assessment, either by the directors, or by a receiver duly appointed by the court upon such corporation becoming insolvent, can be upheld.

A receiver of an insolvent mutual insurance company cannot legally assess any person insured therein, beyond his proportion of the losses; and he is bound to allow, towards the proportions of members, what they have paid on former assessments, for the same losses, &c. whether void or valid.

While questions in relation to disputed claims against the corporation remain undetermined, so that the true amount or proportion to be paid upon the respective premium notes cannot be ascertained, the court will not direct the receiver to specify the sum due, and on receiving such amount, in any case, to surrender the note.

He may be directed to receive surrenders of policies, if desired, on payment of what is legally due for assessments; but the deposit notes should be retained by the receiver, until paid, to the extent of their liability for previous losses.

THIS was an appeal from portions of an order made at a special term of this court in the county of Genesee, held by Hon.

Matter of Bangs.

Levi F. Bowen, on the 10th day of January, 1853, denying in part the prayer of the petition in this matter. The petition expressed that it was in behalf of the petitioners and all other persons standing in the same situation; and the following facts, among others, appeared by the petition and affidavits in answer thereto. The Genesee Mutual Insurance Company was incorporated under and by virtue of an act of the legislature, passed May 3d, 1836, and entered upon the business of its incorporation, and carried on the same, until the 7th day of October, 1851. On the day last named, upon the petition of a judgment creditor of the corporation, and under the authority of section 36 of article 2, chapter 8, title 4, of the third part of the revised statutes, an order was made by this court, at a special term thereof, upon notice, sequestrating the stock, property, things in action and effects of said corporation, and appointing Bangs receiver thereof. On the 16th day of June, 1852, on the application of said receiver, under the act of the legislature of the 19th of March of that year, chapter 71, an order was made by the court, for classifying the losses sustained by the corporation, and authorizing assessments of the deposit notes in the hands of the receiver, amounting to over $900,000 for the whole amount of the indebtedness of the corporation—$176,919,66, with the further sum of ten per cent thereon, for costs of collection and incidental expenses, making a total of $194,611,62. The receiver thereupon arranged and classified the losses of the corporation into sixty classes, and made the assessments authorized by said order. No general meeting of the creditors of said corporation had been called by the receiver. Some of the petitioners were members of said corporation, and the others had recently been such members, and their notes given for policies were still held by said corporation, and were embraced in the assessments.

The petition prayed, among other things, that the order of the court made in June, 1852, for the assessment of the deposit notes, be set aside; that the receiver be directed to call a general meeting of the creditors of said corporation, and adjust, as far as may be, all claims, and demands for and against the corpora-

tion, &c.; that the receiver be authorized and directed to ascer-tain the just amount or proportion to be paid upon the respective premium notes of policy holders, and present and recent mem-bers of said corporation, to discharge the demands and the rea-sonable expenses of the trust; and that they be authorized and directed, on payment of such amounts respectively, and the cancellation and surrender of the policies issued thereon re-spectively, or any of them, to surrender such premium notes respectively; also that the petitioners and all other persons standing in the same, or substantially similar situations with them, and who might elect to be made parties in fact to the pro-ceedings in the premises, be made parties in fact thereto, and be entitled to notice of all and every application that might be made to the court, in respect to any matter wherein they were interested. So much of the prayer of the petition as is above given, was denied by the court and was embraced in the appeal. The other facts, necessary to an understanding of the points decided, appear in the opinion of the court.

*J. L. Brown*, for the appellants.

*S. Mathews*, for the respondent.

*By the Court*, T. R. STRONG, J.  The receiver is an officer of the court, and subject to its control, in the performance of his duties; and the petitioners have such an interest in, and sustain such a relation to, the trust, as entitled them to apply by petition, for relief, in respect to the action of that officer. (2 *R. S.* 463, § 36.  *Laws of* 1852, *p.* 67.  2 *R. S. pt.* 3, *art.* 3, *tit:* 4, *ch.* 8.  *Edwards on Receivers*, 2, 4, 125, 126.  *Verplanck* v. *Mercantile Ins. Co. of N. Y.*, 2 *Paige*, 438.  *In the matter of Merritt*, 5 *Id.* 125.  *In the matter of the City Bank of Buffalo*, 10 *Id.* 378.  *Noe* v. *Gibson*, 7 *Id.* 513.  *Vincent* v. *Parker*, *Id.* 65.  *Howell* v. *Ripley*, 10 *Id.* 43.  *Mann* v. *Pentz*, 3 *Comst.* 415.  *Gillet* v. *Moody*, *Id.* 479.  *Merritt* v. *Lyon*, 16 *Wend.* 405.)

It is declared in the order appointing the receiver, that "he

Bangs v. Gray.

shall possess all the powers and authority conferred, and be subject to all the obligations and duties imposed upon receivers, in and by articles two and three, of title four, of chapter eight, part three, of the revised statutes of this state, including all the powers and authority conferred by law upon trustees to whom an assignment of the estate of insolvent debtors may be made, pursuant to the provisions of chapter five, of the second part of the revised statutes." And by chapter 71, of the laws of 1852, section one, he has all the power and authority, and is subject to the same obligations and duties as are provided in the said third article. Among the duties of the receivers prescribed by that article, is the following : "They shall call a general meeting of the creditors of such corporation, within four months from the time of their appointment, when all accounts and demands for and against such corporation, and all its open and subsisting contracts shall be ascertained and adjusted, as far as may be, and the amount of moneys in the hands of the receiver declared." The receiver, in this case, was therefore required to call a meeting of creditors for the purpose contemplated by the provision of the revised statutes, both by the order for his appointment, and by the act of 1852; but it is quite apparent, from the papers on the motion, that no important benefit would now be accomplished by such a meeting. The claims in favor of, and against, the corporation, and its subsisting contracts, have been ascertained and adjusted as far as practicable, without judicial determinations, in respect to some of them.

It is manifest that it would not be practicable for the receiver, while the questions in relation to disputed claims against the corporation remain undetermined, to ascertain the true amount or proportion to be paid upon the respective premium notes; and it does not appear that it could be so nearly ascertained that it would be proper for the court to direct him to determine the same, and on receiving such amount in any case, to surrender the note. The receiver states in his affidavit, that he is and has been willing and desirous to receive surrenders of policies, on payment of assessments connected therewith ; and it is proper that he should be directed, if necessary, to do so, on pay-

ment of what is legally payable for assessments. By such surrender, and the acceptance thereof, policy holders would be relieved from liability, in respect to future losses ; and requiring such acceptance by the receiver, upon the condition last mentioned, which is in accordance with their contract, is all they can properly ask. Their notes should be retained by the receiver, until paid, to the extent of their liability for previous losses.

There does not appear to be any necessity, in order to the protection of the just rights of the petitioners and others similarly situated, that the receiver should be required to give them notice of all applications to the court, which he may make in the execution of his trust ; the duty to do so, ought not, therefore, to be imposed upon him.

The more important question presented, relates to the validity of the assessments made by the receiver, under the authority and sanction of the court in June, 1852. It is claimed on the part of the petitioners, that they are illegal, and should, for that reason, be set aside. The papers on the motion show that assessments were made by the directors of the corporation in 1849, 1850 and 1851, to cover previous losses, and that the petitioners and many others paid the sums charged them in those assessments. At the time of the making the assessments by the receiver, over one hundred thousand dollars remained due on those former assessments ; and his assessments were to provide for the whole indebtedness, and claims against, and liabilities of the corporation, and were made upon the notes of the petitioners and others in their situation, and all notes held by the receiver liable for the payment of the losses and liabilities of the corporation. The assessments made by the receiver were, as I understand the papers, to the extent of over one hundred thousand dollars, for the same indebtedness for which the assessments of the directors were in part made. The petitioners, therefore, and all persons who were assessed in the former assessments, and paid the sums assessed against them, as their proportions to pay, of the indebtedness provided for, are now required, by the assessments of the receiver, to contri-

Bangs v. Gray.

bute a second time a proportionate share for the payment of a large part of that indebtedness.

It is stated in the affidavit of the receiver, in support of his assessments, that, of the sum remaining due upon the assessments of the directors, about fifty thousand dollars is upon notes given for policies on property in Canada, which sum has been declared uncollectable by a decision of the courts in that province; that said policies and notes are void; that about twenty-one thousand dollars is for assessments on notes for policies on property out of this state, and in other states of the union; and that, by reason of the exemption and stay laws of those states, the larger part of it cannot be collected, or the expenses of collection would be equal to that sum, as he believes; that there remains unpaid upon said assessments in this state, about forty-three thousand dollars, some part of which can probably be collected, but the greater part of which will, in his belief, prove uncollectable; that the assessment made by the directors in 1850, was a ten per cent assessment on all premium notes after a certain date, without reference to the time for which they were to run, a large portion of the sum remaining unpaid upon which is due from persons in Canada, or upon policies improperly assessed; that the corporation have been beaten in several suits on notes so assessed; and that he is advised and believes the assessment is void. It is further stated by the receiver, that a large amount of indebtedness had accrued against the corporation, upon which interest was accumulating, and for which no provision has been made in any prior assessments; that interest was and is accumulating, at the rate of about one thousand dollars a month; and that if he had deferred making the assessments of 1852, until the collectable balance on the assessments had been realized, a much larger amount of interest would have accumulated on the indebtedness of the corporation, than would have been realized on the assessments; and the final closing up and settlement of the trust would have been deferred for a long time, and large losses would have accrued thereby, by accumulations of interest, the happening of new losses and the bankruptcy of portions of the policy holders.

The assessments of the receiver were made under the author-ity of chap. 71 of the laws of 1852, § 2, which provides, that " in case the corporation, in regard to which a receiver has been, or shall be hereafter appointed, is, or shall be a mutual insurance company, such receiver shall have ·full power, under the authority and sanction of the court appointing him, to make all such assessments on the premium notes belonging to such corporation, as may be necessary to pay the debts of such corporation, as by the charter thereof, the directors of such corporation have authority to make ; and the notice of such assessment may be given in the same manner as is provided in the charter of said company for the directors of said company to give ; and the receiver shall have the like rights and reme-dies upon and in consequence of the nonpayment of such assessments, as are given· to the corporation or the directors thereof, by the charter of such corporation." By this section, the receiver might, with the approbation of the court, make such assessments as the charter of the corporation authorized the directors to make ; and we must look to the charter to ascer-tain what powers are conferred on the directors on that subject.

The third section (*Laws of* 1836, *p.* 318) declares that the corporation shall possess all the powers and privileges, and be subject to all the restrictions and limitations which are granted to or imposed upon the Jefferson County Mutual Insurance Company, by the act incorporating that company. (*Laws of* 1836, *p.* 42.) By § 6 of the last named act it is provided that " every person who shall become a member of said corporation by effecting insurance therein, shall, before he receives his pol-icy, deposit his promissory note for such a sum of money as shall be determined by the directors ; a part, not exceeding five per cent of said note, shall be immediately paid, and the re-mainder of said deposit note shall be payable in part or the whole, *at any time when the directors shall deem the same requisite for the payment of losses by fire, and such inciden-tal expenses as shall be necessary for transacting the business of said company ;* and at the expiration of the time of insu-rance, the said note, or such part of the same as shall remain

unpaid, after deducting all losses and expenses occurring dur-- ing such time, shall be relinquished and given up to the maker thereof." Section 8 provides that " every member of said com- pany shall be bound to pay for losses, and such necessary expenses as aforesaid, accruing in and to said company, *in pro- portion to the amount of his deposit note.*"

The 9th section declares that " suits at law may be main- tained by said corporation against any of its members for the collection of said deposit notes or any assessment thereon, or for any other cause relating to the business of said corporation." The object of this section was simply to confer authority to sue in proper cases, and in reference to deposit notes, upon their becoming payable according to other provisions. It was not intended, by it, to authorize the collection of such notes at the arbitrary discretion of the corporation. By section 10, " The directors shall, after receiving notice of any loss or damage by fire, sustained by any member, and ascertaining the same, or after the rendition of any judgment as aforesaid against said company for loss or damage, settle and determine the sums to be paid by the several members thereof as their respective pro- portions of such loss, and publish the same in such manner as they shall see fit, or as the by-laws shall have prescribed ; *and the sum to be paid by each member shall always be in propor- tion to the original amount of his deposit note or notes,* and shall be paid to the treasurer within thirty days next after the publication of said notice. And if any member shall, for the space of thirty days after the publication of said notice, neglect or refuse to pay the sum assessed upon him, as his proportion of any loss as aforesaid, in such case the directors may sue for and recover the whole amount of his deposit note or notes, with costs of suit, and the amount thus collected shall remain in the treasury of said company, subject to the payment of such losses and expenses as have or may thereafter accrue ; and the bal- ance, if any remain, shall be returned to the party from whom it was collected, on demand, after thirty days from the expira- tion of the time for which insurance was made." Section 11 makes provision for cases where the whole amount of deposit

notes is insufficient to pay losses, and authorizes a limited assessment in those cases.

These are all the provisions relating to the subject of assessments and payments upon the deposit notes, and they plainly contemplate that no portion of the notes, beyond the per centage required to be paid on depositing them with the company, shall be payable, except as it shall be necessary for the payment of losses by fire and incidental expenses, unless default shall be made in the payment of assessments ; that the liability of each member for the payment of losses and expenses shall not exceed the proportion which the amount of his deposit note bears to the amount of all the deposit notes at the time the losses happened and expenses were incurred ; and that on receiving notice of a loss, the directors shall ascertain the same and assess the sum to be paid by each member in the proportion aforesaid. The share of the losses and expenses to be borne and paid by each member is stated in such language as to leave no room for doubt in regard to the intention of the legislature. By section 8, it is to be in proportion to the *amount* of his deposit note ; and by section 10, "it shall always be in proportion to the *original amount* of his deposit note." This language entirely excludes the idea of a member being liable to assessments to meet deficiencies of means arising from a failure to collect of other members. When a member has paid towards any loss or expenses in proportion to the amount which his deposit note bears to the other deposit notes, legally assessable, his liability to assessment in respect to such loss or expenses is discharged. He cannot be assessed beyond such proportion, without a violation of the charter of the corporation ; and no such assessment, either by the directors or by a receiver, whose powers in regard to assessments, it has been shown, are no greater than the charter vests in the directors, can be upheld.

The counsel for the corporation contended on the argument, that by section 69 of 2 R. S. 469, relating to the voluntary dissolution of corporations, the receiver might collect the whole amount unpaid on each of the deposit notes, without any assessment. Whether that position is correct or not does not affect

the question of the legality of the assessments made by the receiver; but I am satisfied it is not tenable. That section provides that "if there shall be any sum remaining due upon any share of stock subscribed in such corporation, the receivers shall immediately proceed and recover the same, unless the person so indebted shall be wholly insolvent." When the sums assessed upon premium notes, as the proportion belonging to them to pay, are paid, nothing remains due thereon, and that section is not applicable if it can be held to extend to corporations like the present. The construction claimed for it by the counsel would bring it in direct conflict with the provision of the charter of the corporation, that "the sum to be paid by each member shall always be in proportion to the original amount of his deposit note."

It was undoubtedly proper for the court to authorize the receiver in this case, and for the receiver to make assessments to pay losses and expenses not provided for by former assessments, and also any indebtedness for which assessments had been made by the directors which were void; and I am not prepared to say that he might not, with the approbation of the court, make assessments for the same debts for which valid assessments had been made by the directors. He could not, however, legally assess any person beyond his proportion, as above stated, and was bound to allow, towards the proportions of members, what they had paid thereof on the former assessments, whether void or valid.

If my understanding of the facts, and my views of the law, as above expressed, are correct, the petitioners, and all other persons who paid their proportions of the assessments of the directors, have been assessed by the receiver far beyond their legal liabilities, and to that extent his assessments should be corrected. It is not necessary, however, to set aside his assessments any farther than they are erroneous. If the sums paid by those persons in former assessments, or any of them, were the proportion of the indebtedness embraced in those assessments, which the deposit notes of those persons bore to the whole amount of deposit notes assessable for that indebtedness, the assessments of the receiver, as against those persons, for any portion of that indebtedness or interest thereon, should be vacated. If the sums

paid were less than such proportion, his assessments, as against those persons, should be set aside only so far as they embrace any part of the indebtedness provided for in the former assessments, or of which the sums paid were their proportions. And the receiver should be restrained from enforcing, as against them, his assessments for any indebtedness of which they have paid their proportion upon the principle above stated. He should also be required to ascertain the proportions, upon that principle, for which those persons are liable to be assessed, and upon payment by any of them of his proportion, and a surrender of his policy, to accept a surrender thereof.

An order is granted in accordance with this opinion, to embrace such provisions as may be necessary to carry the decision into effect, and to be settled before one of the justices of this court.

[CAYUGA GENERAL TERM, June 6, 1853. *Welles, Selden* and *T. R. Strong,* Justices.]