## SHAUGHNESSY *vs.* THE RENSSELAER INSURANCE COMPANY.

Under the 11th section of the act of 1849, respecting the incorporation of insurance companies, which provides that whenever the directors shall deem it necessary to make an assessment, for the payment of losses, &c., they shall settle and determine the sums to be paid by the members of the company as their respective portions of such loss, and that the sum to be paid by each member shall always be in proportion to the original amount of his deposit note or notes, the members of the company are only liable to pay upon their premium notes their proper shares, respectively, of the losses or damages sustained by the members.

The liability of the members upon their deposit notes, cannot be increased by the fact that the company has become insolvent, and its effects are transferred to a receiver.

When an insurance company becomes insolvent the receiver, in respect to the liability of the members upon their premium notes, is substituted in the place of the directors, and is vested with their rights and powers. He may collect of the members, upon their premium notes, whatever amounts the directors might have collected, and in the same manner. But he cannot, without making an assessment, proceed to collect the whole amount of the deposit notes.

It was not intended by the legislature that those who should become members of mutual insurance companies, by giving their deposit notes, should be held liable, either to the company itself, or to a receiver upon the insolvency of the company, for any greater amount than should be found necessary in order to provide the indemnity contemplated by this system of insurance: and for the purpose of determining the extent of such liability, an assessment is necessary.

In making the assessment, no discrimination is to be made between notes given when higher rates of insurance existed, and those made under reduced rates.

Where a portion of the business of an insurance company is transacted upon the stock plan, and a portion upon the mutual system, and the premiums received from persons obtaining insurance upon the former plan, by paying the whole premium in cash, have been expended in the payment of losses and expenses,

Shaughnessy *v.* The Rensselaer Insurance Company.

and thus relieving former members from assessments upon their notes, and leaving others to be assessed for the payment of subsequent losses, there is no remedy for any injustice which may result from this mode of transacting the business of the company; although the effect is to cast the greater burden upon those whose notes happen to be in force at the time the insolvency of the company occurs.

The receiver of an insolvent corporation is to make separate assessments for the payment of the several losses for which the company is liable, upon all the premium notes in force at the time each successive loss happened.

Where several losses have occurred at the same time, or so nearly together that the same notes are liable to be assessed for the payment of them all, only one assessment is necessary.

THE defendant is a corporation organized under an act of the legislature, passed April 29, 1836, and reorganized under the provisions of the general act for the incorporation of insurance companies, passed April 10, 1849. The plaintiff having recovered a judgment against the corporation in this court, and an execution upon such judgment having been returned unsatisfied, this suit was brought, in pursuance of the provisions of the revised statutes relating to "proceedings against corporations in equity," for the purpose of sequestrating the stock, property, &c. of the corporation; and thereupon, by an order made by this court on the 19th of February, 1855, Eugene Hyatt was appointed receiver of all such stock, property and effects, who duly qualified and entered upon the discharge of his duties.

The reorganization of the corporation, under the act of 1849, took place on the 23d of October, 1851. At that time, the company had on hand a large amount of premium notes, received for policies of insurance which were still in force. These notes were retained by the reorganized company as a part of its capital. The rates of insurance were so altered at the time of the reorganization, that the premium notes received for insurance were but about one-fifth or one-sixth as large, in amount, as similar notes received before the reorganization. And on the 20th of June, 1853, a further reduction of about one-third took place. A part of the business of the company

was transacted upon the stock plan, the company receiving the whole premium of insurance in money.

In November, 1855, the receiver presented his petition to this court, in which he stated that the total amount of the liabilities of the company, so far as the same had been ascertained, amounted, on the first day of September, 1855, to $109,063.48, including interest and cost, and, if ten per cent be added to cover the expenses of collection, &c., the sum would amount to $120,035.36. It was further stated, that with the exception of a few of the older losses, the premium notes in force at the time of the happening of the losses, would be insufficient for the payment of the same. The petitioner prayed for an order authorizing him to make an assessment upon the premium notes in his hands as receiver, for the purpose of paying the debts and liabilities of the company, and for the direction of the court in the premises.

*C. F. Taber,* for the receiver.

HARRIS, J. The first question which presents itself upon the consideration of this application is, whether any assessment at all is required. This company was brought under the provisions of the act of 1849, providing for the incorporation of insurance companies, by an amendment of its charter, in the manner prescribed by the 14th section of the act. The 11th section of the charter, as thus amended, provides that whenever the directors should deem it necessary to make an assessment, for the payment of losses or damages sustained by any member or members, they should settle and determine the sums to be paid by the members of the company as their respective portions of such loss or damage, and the sum to be paid by each member should always be in proportion to the original amount of his deposit note or notes. The 10th section of the original charter of the company contains substantially the same provision. Under these provisions, it is clear that the members of the company are only liable to pay upon their premium notes their proper share, respectively, of the losses or damages sustained by the

members. Any attempt to collect more than such share would be unauthorized. So strictly has the restriction been applied by this court, that it has been held that a member of the company was not liable to be assessed upon his premium note beyond his proportionate share of the losses and damages for which the company were liable, even for the purpose of meeting the deficiencies arising from the inability of the company to collect from insolvent members their proportions of such losses or damages. (*See Bangs* v. *Gray,* 15 *Barb.* 264.) But the court of appeals, regarding it obligatory upon the members of the company to furnish the means of paying all the liabilities of the company for losses or damages, have held that the members are severally liable to be assessed upon their premium notes, in such proportion as their several notes shall bear to the aggregate amount of collectable notes held by the company. (*See Bangs* v. *Gray,* 2 *Kernan,* 477.) The effect of this decision is, to make each member of a mutual insurance company liable to assessment, the guarantor of the responsibility of all the other members thus liable. Still, the liability of the responsible members is limited to such proportion of their deposit notes as may be necessary for the payment of the losses and damages for which the company has become liable.

Can the liability of the members upon their deposit notes be increased by the fact that the company has become insolvent, and its effects transferred to a receiver? I think not. The second section of the act to facilitate the collection of debts against corporations, passed March 19, 1852, declares that in case a receiver of a mutual insurance company shall be appointed, such receiver shall have full power, under the authority and sanction of the court appointing him, to make all such assessments on the premium notes belonging to such corporation as may be necessary to pay the debts of such corporation, as by the charter thereof the directors of such corporation have authority to make. (*Sess. Laws,* 1852, *p.* 67.) Thus, in respect to the liability of the members upon their premium notes, the receiver is substituted in the place of the directors, and vested with their rights and powers. He may collect of the members,

Shaughnessy *v.* The Rensselaer Insurance Company.

upon their premium notes, whatever amounts the directors might have collected, and in the same manner.

It has been said that the deposit notes held by a mutual insurance company constitute its capital stock. (*See Van Buren v. The Chenango County Mutual Insurance Company,* 12 *Barb.* 671.) In a restricted sense, this is so. The notes stand in the place of capital stock, so far as means for the payment of debts and liabilities are concerned. But beyond this, I do not perceive that the deposit notes possess the attributes of capital. They produce to the company no income. The very theory upon which the company is organized renders it impossible that there should be a distribution of profits, or, indeed, of capital among its members.

The receiver of such a company, when it becomes insolvent, is appointed under the provisions of the revised statutes relating to proceedings against corporations in equity, (2 *R. S.* 462,) the 41st section of which authorizes the appointment of such an officer to take charge of the property and effects, and to collect, &c. the debts and demands due the corporation. If the whole amount of the deposit notes was not due the corporation, so that the same might have been collected by the corporation itself, it is obvious that no authority is here conferred upon the receiver to collect the whole amount. The next section declares that the receiver so to be appointed shall possess all the powers and authority conferred by the article relating to the voluntary dissolution of corporations, upon receivers appointed under that statute, (2 *R. S.* 467,) the 69th section of which declares, that if there shall be any sum remaining due upon any share of stock, &c., the receiver shall immediately proceed and recover the same. It has been supposed that this provision is sufficiently broad to authorize the receiver, without assessment, to proceed to collect the whole amount of the deposit notes. But, with great respect for the learned judges who have expressed this view, I cannot perceive that the section upon which they rely can be made to support such a theory. The receiver is authorized to collect from the stockholders any sums remaining due upon their stock. Whether in this case

any sums, or, if any, what amount remains due, depends, as we have seen, upon the extent of the losses and damages for which the corporation is liable, and for the payment of which the deposit notes alone are held. I am satisfied that it never was intended by the legislature that those who should become members of mutual insurance companies, by giving their deposit notes, should be held liable, either to the company itself, or to a receiver, upon the insolvency of the company, for any greater amount than should be found necessary in order to provide the indemnity contemplated by this system of insurance, and that for the purpose of determining the extent of such liability an assessment is necessary.

The receiver has submitted the further question, whether any discrimination shall be adopted between the assessment upon the notes made when the higher rates of insurance existed, and those made under the reduced rates. The rule will undoubtedly operate unequally in such a case, but the law has authorized no such discrimination. It declares that the sum to be paid by each member shall always be in proportion to the original amount of his deposit note. (*See Herkimer Co. Mutual Ins. Co.* v. *Fuller,* 14 *Barb.* 373.)

Another question presented by the receiver relates to the application of the moneys received by the company from persons obtaining insurance by paying the whole premium in cash. The premiums thus received have been expended in the payment of losses and expenses, and thus relieving former members from assessments upon their notes, and leaving others to be assessed for the payment of subsequent losses. There is no remedy for any injustice which may result from this mode of transacting the business of the company. It was authorized to make insurance both upon the mutual and the stock plan. The deposit notes were liable to assessment only when, after applying the funds of the company to the payment of losses, it should be found necessary. The effect of this system undoubtedly is, to cast the greater burden upon those whose notes should happen to be in force at the time the insolvency of the company occurs.

But this was one of the risks which the parties took upon themselves at the time they engaged in the adventure.

An order should be entered authorizing and sanctioning the assessments proposed in the schedule annexed to the petition, the theory of which is, that separate assessments shall be made for the payment of the several losses for which the company are liable, upon all the notes in force at the time each successive loss happened. Where several losses have occurred at the same time, or so nearly together that the same notes are liable to be assessed for the payment of them all, but one assessment is necessary. The effect of this distribution of liabilities will be to require the payment of the full amount of all the deposit notes in force on and after the 24th of August, 1854, while less than the whole amount will be required upon such notes as expired prior to that date.

The order should also provide for the publication of notice of the assessment in the manner prescribed by the second section of the act of 1852.

Order accordingly.

[ALBANY SPECIAL TERM, November 19, 1855. *Harris*, Justice.]