The only question in this case is, whether the plaintiff, the receiver of the Empire State Mutual Insurance Company, can maintain an action upon the defendant's note without any precedent assessment. The company was organized under the act of 1849, providing for the incorporation of insurance companies (ch. 308, Laws 1849). Its business, according to the terms of its charter, was to be conducted on the plan of mutual insurance. The note in question was not one of those given at the formation of the company, under section 5 of the act. On that class of notes, it has been decided in this court that the parties are liable to pay the full amount at any time when payment is required by the company. (White v. Haight, 16 N.Y., 310.) This note was given as a deposit or premium note, and bears date May 16th, 1853. It was, by its terms, payable in such portions, and at such time or times, as the directors might, agreeably to their charter and by-laws, require. In the case just cited, the judge who gave the opinion had occasion to consider, with reference to the history of legislation on the subject in this State, the meaning of the terms, "doing business on the mutual plan," as applicable to one class of insurance companies authorized to be created under the act of 1849. The conclusion was *Page 34 
arrived at, that the essential feature of that species of insurance was, that the insured were themselves insurers of each other, so that each person insured would be entitled to full indemnity against loss to the amount of his insurance, bearing only his proportion of all the losses happening on any of the risks insured against, and of the actual expenses of carrying on the business. Different modes of working out this general plan had existed in companies created under different special charters; but they all were framed to attain, in substance, the same end, of substituting mutual responsibility for capital, either wholly or partially, and of limiting the price of the insurance to the actual cost of indemnity against all the risks of all the members. It would seem to be a necessary part of such a plan of mutual insurance, that the price to be paid for any particular insurance should be determined by the losses and expenses actually occurring during the period of the insurance. For, just in so far as that rule should be departed from, would the business cease to possess the character of mutuality, and partake of that of the ordinary contract of insurance, in which, for a price fixed and determined beforehand, one agrees to indemnify another against loss. The question, therefore, in this case, is, whether, looking to the terms of this note and to the provisions of the charter and by-laws, we are not bound to say that this defendant's contract was not a contract to pay, at all events, the sum mentioned in his premium note, nor to pay at the mere discretion of the directors for the time being; but was, and was only, an undertaking to pay to the extent of the note, in case such payment should turn out to be necessary to meet losses and expenses incurred during the continuance of the company's contract to insured him. In other words, whether he was bound to pay, except upon an assessment. Neither the terms of the charter nor by-laws of this company are as specific on this subject as, in such companies, they commonly are; but it is, I think, necessarily to be collected, both from the provisions which are made and the absence of other provisions, and from the general nature of the business in which the company was engaged, that an assessment was a *Page 35 
necessary preliminary to a suit. In the charter and by-laws are contained provisions for different classes of hazards, and that premium notes shall not be assessed for the payment of any losses except in the class to which they belong. Another provision of the by-laws is, that when an assessment shall have been declared and demanded by the company or their agent, and the insured shall, for thirty days, refuse or neglect to pay, the company may annul the policy, but retain and collect the premium note, like all others. And, again, it is provided, that a member of the company may at any time withdraw and receive back the premium note, by paying his or her share for losses while the policy was in force. Now, it is possible to say that these positive provisions are merely arbitrary, intended to govern the rights of the parties in the special cases to which they relate, but throwing no light on the meaning of the parties in cases not falling within their terms; but such a construction does not proceed upon the settled rule that the meaning of parties contracting is to be collected from all their language. These provisions are entirely in harmony with the general idea that the members of the company were parties to a contract of mutual indemnity, and provide for the equitable rights of the parties on that basis. They assume that the principle of assessment for losses belongs to the kind of insurance which this company was engaged in, and apply it to those particular cases for which special provision was necessary.
If this be not the just construction, then what any insured party shall pay — to the extent of his premium note — will depend on no rule, but on the arbitrary pleasure of the directors, who may call upon one and not upon another. It cannot be conceived that such was the meaning of the parties to these contracts, and the only alternative is to hold that, looking at the contract in the light of the previous history of mutual insurance, and of the positive provisions for assessments in certain cases, and of the absence of any provisions for the protection of any individual note from unequal and inequitable calls, there can be collected an intention that these premium notes were to be collectable only on assessments for losses and *Page 36 
expenses incurred during the time of the existence of the corresponding agreements to insure.
The receivers of these companies are, by chapter 71 of the Laws of 1852, authorized to make assessments in the same manner as the directors might; but I find no warrant for a suit by the receiver under circumstances in which the company could not have maintained a suit. It does not follow because the company is insolvent, that this defendant is bound to pay the full amount of his note. The losses incurred during the period for which it is liable to contribute may not be sufficient to exhaust its whole amount, and yet the company may be insolvent. The provision of the Revised Statutes directing receivers to sue for unpaid subscriptions for stock has no application to these notes, for they are not, as stock subscriptions are, agreements to pay at all events. These are agreements to pay so far as shall be necessary, and upon assessments of losses and expenses upon the notes liable to be called on to make them good. The questions involved in this case have been presented more or less directly in numerous cases in the Supreme Court, and the great preponderance of the decisions in that court is in favor of the conclusion at which we have arrived. Shaughnessey v. TheRensselaer Insurance Company (21 Barb., 605); Devendorf v.Beardsley (23 id., 656); Williams v. Babcock (25 id.,
109); Williams v. Lakey (15 How. Pr., 209), will afford references to all of them.
ALLEN, J., delivered an opinion to the same effect; GRAY, J., expressed no opinion; all the other judges concurring,
Judgment affirmed. *Page 37