THE GREAT FALLS MUTUAL FIRE INSURANCE COMPANY *v.* NATHAN HARVEY & A.

In assnmpsit, by a mutual fire insurance company against one of its members, upon his premium note, promising to pay to them a certain sum of money in such portions and at such times as the directors of the company may agreeably to their act of incorporation and by-laws require, where under the charter and by-laws the defendant is liable to assessment only for losses and expenses occurring during the term mentioned in his policy, the plaintiffs cannot recover unless they show an assessment duly made for such losses or expenses.

Where A. has has duly become a member of a mutual fire insurance company, and subsequently the company pass a by-law which is in conflict with their charter, this by-law cannot, unless assented to by A., change and impair his rights under · his previous contract.

In a suit by a mutual fire insurance company against a member upon his premium note, the assent of the member to a by-law, adopted by the company after the making of his contract with them, will not be presumed, if the by-law is in conflict with the charter of the company, and if it would change and impair his rights under his contract.

ASSUMPSIT upon the following premium note :

For value received, in Policy No. 1788, second class, dated the 26 day of July, 1858, issued by the Great Falls Mutual Fire Insurance Company, I promise to pay to to the said Company, or their treasurer for the time being, the sum of seventy-eight 0–100 dollars, in such portions and at such time or times, as the Directors of said Company may, agreeably to their Act of Incorporation and By Laws, require.

NATHAN H. HARVEY, Principal,<br>DAVID MURRAY, Surety.

The plea was the general issue with a brief statement.

The plaintiffs offered the note in evidence; also an application by the defendant, Harvey, to the company, for insurance on his dwelling house $1000, barn $100, furniture $200, in which he "covenants and agrees, * * that he holds himself bound by the act of incorporaion and by-laws of said company," and which was approved by three directors; also a policy of insurance by said company to said Harvey upon said property, on the back of which policy is indorsed, "I surrender this policy Jan'y 15, 1862, and have no claim vs. you, now or hereafter. Ja'y 27, 1862. N. H. Harvey;" also an additional act of incorporation and two by-laws, No. 14 & 15, adopted since the defendant's policy was issued, which the court held to be inadmissible to affect the rights of the defendants, and the plaintiffs excepted.

Joseph A. Stickney testified that he is, and since 20th June 1860, has been clerk of the corporation, and secretary, and treasurer, and that the books produced by him, are the records and books of account of the corporation. He showed, on the book of records, a record of the first meeting of the Insurance Company, May 2d, 1849; a record of a notice, purporting to have been published in the Great Falls Transcript, and in the Dover Gazette, of the date of April 21, 1849, signed by John A. Burley and Ichabod G. Jordan, named in the act to call the first meeting, and copies of those newspapers of that date containing said notice. By the record it appeared, that the act of incorporation was read and accepted; by-laws were adopted; and seven directors chosen.

The record of the meeting, at which the additional act was accepted, and new by-laws adopted, was offered. The evidence of notice of the meeting was a copy of the notice and affidavit of its publication, by the secretary entered of record. The defendants objected that this was not evidence of the fact of notice; but the court admitted it, and the defendants excepted. The defendants objected that the call for the meeting did not specify what was proposed to be done at the meeting, and was therefore insufficient; but the court overruled the objection, and the defendants excepted.

Defendants objected that the by-laws, 14 and 15, are in conflict with the charter, and the court so held, and the plaintiffs excepted.

By the records of the company it appeared, that a meeting of the company was held, August 6, 1861, for the choice of directors, pursuant to a notice of July 8; that a board of directors was then chosen, all residents of Somersworth. The directors held a meeting the same day, and elected a president, and Joseph A. Stickney, secretary, treasurer and clerk, who was sworn.

A meeting was held, Oct. 7, 1861, upon the call of the clerk, and adjourned to Oct. 23, on which day Mr. Rollins, from a committee before appointed, made a report, stating the amount of the liabilities of the company, and the rate per cent. to be assessed on each class to pay off those liabilities, namely: in the first class $3294, and the second class $6,039.44, in all $9,333.44. The defendants objected to this report as evidence of the losses or expenses of the company.

The report was received and the committee discharged. The directors then voted, that, for paying the debts arising from losses and expenses in the first and second classes, an assessment of six-tenths of one per cent, per month, be assessed on all notes of said classes, dated prior to Nov. 1, 1858, and three-tenths of one per cent. per month be assessed on all notes of said first and second classes, dated since Nov. 1, 1858, and before July 1, 1861, the number of months to be reckoned for the time each policy was in force, in the two years, beginning July 1, 1859, and ending June 30, 1861; all moneys realized to be applied to pay losses in each class, according to the charter and by-laws; payable 1st January, 1862.

On the 14th Dec., 1861, the directors met, and voted, that, whereas the time has expired in which personal notices should be given of the assessment, 18th Nov. last, and agreeably to article 15th of the by-laws,

the time of payment be extended to 1st Feb., and notice thereof, public and private, be given by the treasurer. On the 19th Dec., 1861, notice was published in the Dover Enquirer, that an assessment was ordered by the directors on the 23d Oct., payable Jan. 1, 1862, and by their order the time of payment was extended to Feb. 1, at the treasurer's office, which notice was again published in the same paper, Dec. 26, 1861, and Jan. 2. 1862. Joseph A. Stickney, the treasurer, gave actual notice to N. H. Harvey, Dec. 31, by mailing a letter addressed to him at Newmarket, in the same form as the notice in the newspaper. About the 11th of April, Mr. Stickney saw N. H. Harvey at Newmarket, and said Harvey then told him that he received a notice from him of this assessment. The amount of the assessment on Harvey's note, was stated in that notice to be $11.23. The assessment book of the company was produced, in which the sum of $11.23 was set against No. 1788, the number of Harvey's note and policy.

The treasurer testified that he computed the assessment on the several notes, and that the cast was made in accordance with the vote of the directors. The adjustment and payment of claims for losses was proved as follows : George Smith, 660 dollars ; A. A. Perkins, $213.75 ; E. A. Tebbetts, $1308 ; in part, Samuel Furnel, $   ; L. Woodman, $145 ; S. Frend, $17 ; W. F. Emery, $42.80. This loss was estimated at 44.49, the amount of Emery's claim, in making the assessment. The defendants except to the evidence.

A statement of the losses and expenses in the second class was printed upon the back of the receipts given to the members, on payment of their assessments. This statement consisted of various items entered as paid for office expenses and salaries, but without date, amounting to $2698.54 ; and of a list entitled "losses," containing the names of fourteen persons with what purported to be their residences, and a sum set opposite each, amounting in all to $3507.95 ; making the expenses and losses in all $6206.49, from which was deducted $1381.95, as cash premiums received, leaving a balance of $4824.54. It did not appear, that this statement was to be found upon the records of the company. Daniel G. Rollins, one of the directors, testified that he was one of a committee to estimate the amount and rate per cent. of the assessment.

The defendants objected that the losses and expenses, for which the assessment was made, could not be shown in this way, but the court admitted it subject to the opinion of the whole court.

He testified that the assessment was made to pay the liabilities of the company arising from losses and expenses. " We took the aggregate of indebtedness of the company, and on the other side the aggregate of the premium notes in force in each class. I cannot tell from any minutes of mine, or from memory, the items of the expenses and losses upon which we made our estimate. I think we had before us such a schedule as is printed on the receipts ; but I do not recollect the items and amounts. We produced on paper the result of our investigations. To produce the amount required, $6,039.44, we estimated the indebtedness of the company, on account of losses and expenses in the second class, and added the expenses of collection, and the losses in collecting, by estima-

tion.  We had three various sums, but I do not distinctly remember them.  We divided the expenses to the classes.  It is difficult to charge each accurately, but we did it to the best of our ability.  We made an average, and assessed the notes so much a month.  We assessed all the notes, but none dated after the losses.  There was a balance of old assessments not paid.  There was an assessment in 1859 intended to cover all the liabilities of the company; some hundreds of dollars of it were outstanding.  The company were indebted for the balance of old assessments not then paid.  All the old debts were embraced in the assessment, deducting all the old assessments that we considered as available. We had before us all the debts of the company, and all the premium notes of each class.  We divided the amount of indebtedness according to the amount of premium notes of each class; each note to pay so much a month.  All the notes did not run the whole time, some might expire before June, 1861.  I think the company had notes not assessed, and some assessed for one or two months.  If a policy expired, the note would be assessed for the time it was in force.  We made the best division in our power of the expenses between the different classes; probably, according to the amount of premium notes in each class.  The assessment was intended to pay the expenses of the directors that had not been paid.  Other classes had been closed.  I think there was indebtedness on account of those classes, that was included in these assessments. There might probably be so.  The money hired of the Savings Bank, was hired at different periods, some of it several years before; I think not half a dozen years before.  I don't know if it was hired for the benefit of all classes, or of any particular class.  The debt to the Savings Bank was included in my estimate of the company's liabilities.  We divided the indebtedness between the classes, according to our judgment. We did not intend to charge the second class with the expenses of any other.  We looked back and assigned to each class the debt incurred on account of it, as near as we could.  We divided the expenses according to the amount of premium notes in each class, and the debt according to its origin, and according to the amount of premium notes.  We could approximate the origin of all our debts.  We judged near as we could, on which account each debt was incurred.  We intended the last assessment to be sufficient to pay all the indebtedness of the company. The salary of the secretary was fixed at first at $600; it was enlarged in subsequent years. I think Hayes had $800; I think, authorized by votes, though no distinct vote of over $600 a year salary."

J. A. Stickney, being recalled by defendant:  "In my quarterly report of Sept. 30, 1861, I gave an account of all the assessments, and all premium notes, from the beginning of the company, specifying the amount in each class at the old rate and at the new, and the time each note had run in months between July 1, 1859, and June 28, 1861. The assessment in the second class amounted to a little over $6000.  I think there is on the books of the company a discharge of this policy."

"On the register of policies is entered, '1858, July 26, Nathan H. Harvey, Newmarket, Agent, Murray, agent commission, $1,00, amount

insured, $1300, rate 6 per cent., amount of premium note, $78, amount of premium, $7.80, date of discharge Jan. 16, 1862, amount discharged, $1300, amount of note, $78,00.'"

"The liabilities of the company are as follows :

### Notes Outstanding.

| | | | |
|---|---|---|---:|
| Note to Great Falls Bank | Feb. 24, 1854, 4 mo., | | $900 00 |
| "          " | " Nov. 4, 1852, 4 mo., | | 350 00 |
| To Savings Bank, | Aug. 25, 1853, 6 mo., | | 2,000 00 |
| "          " | July 19, 1854, 4 mo., | | 1,300 00 |
| "          " | Jan. 1, 1857, 6 mo., | | 1,000 00 |
| | Total, | | $5,550 00 |

"Of the assessment of 1859, amounting to $7,781.23, $5,844.70 had been paid when this assessment was made. In making this assessment, I did most of the work. We allowed as available of the assessment of 1859, then unpaid, about 20 or 25 per cent. When a man's property was transferred, his policy became void. Some policies were surrendered after the assessment of 1859, before that of 1861. There were a few cases in which no assessment was made; but, in the assessment of 1861, the notes were assessed, though the policies were discharged. We did not relinquish our claim on the notes. The expenses of each class were charged to the class; other expenses were charged to the classes in proportion to the amount insured, agreeably to the 2d section of the charter, which was referred to. We carried to each class what belonged to it. Mr. Rollins is in error as to this. I think nothing was preserved of the computations we made. They were on loose sheets. The report was verbal. The books enable me to show the expenses of each class, and the exact state of each class."

The cash book of the company was produced, which showed losses paid after July 1, 1859, and before this assessment, amounting to $3700. The defendant excepted to this as evidence of losses. The book showed $4000 paid for secretary and treasurer's services, and about $500 for directors' services; these payments covering the claims for such services for several years, in part before July 1, 1859, and before the date of the policy. It was proved that the salaries of the secretary and treasurer were payable quarterly.

In said sum for directors' salaries were embraced the following items, to wit:

| | |
|---|---:|
| D. G. Rollins 11 years salary, | $107 00 |
| Nathaniel Wells 9 years salary, | 78 00 |
| Whitehouse 5 years salary, | 56 00 |
| J. C. Hanson 11 years salary, | 118 00 |

The defendant moved for a nonsuit, after which the plaintiff was allowed to prove that the amount of policies required by the charter was

applied for before any policy issued in the second class.    To prove this Mr. Rollins was recalled, and testified that applications were made to the amount of $25,000 in the second class, before any policies were issued.    This evidence was objected to, but admitted subject to exception.

The books then being produced showed that policies to the amount of $27,849 were issued at the date of the first issued in this class.

The motion for a nonsuit being then renewed, it was ordered, subject to the opinion of the whole court.    Copies of the declaration, brief statement, policy of Harvey, acts of incorporation and by-laws of the plaintiffs, notice given to Harvey, Dec. 31, and the printed statement of losses and expenses, were made parts of the case.

*Jordan & Rollins*, for plaintiffs.

*Small*, for defendants.

BARTLETT, J    The plaintiffs must show that the assessment made against the defendant was an assessment to which he was legally liable. *Atlantic Company* v. *Fitzpatrick*, 2 Gray, 279.    The plaintiffs' charter, among other things, provides for four classes, and that "each class shall be liable for its own losses"; that the premium notes of each class "shall be holden and assessed to pay the losses occurring in their respective classes, and not each for the other"; that the company shall open books of account with each class, and that "all the business receipts, disbursements, losses, assessments and expenses, shall be put to the several classes to which they are applicable"; and that "the general expenses of the company, which are not strictly applicable to either class, shall be apportioned to the several classes according to the amount insured by each; provided that any member of said company may at any time surrender his policy, and in sixty days thereafter be entitled to receive his premium note upon the payment of his proportion of all losses and expenses incurred at the date of such surrender"; that all persons becoming insured in the company "shall be deemed and taken to be members thereof during the term specified in their respective policies and no longer"; that every person who shall become a member "shall, before he receives his policy, deposit his promissory note for such sum of money as shall be determined by the directors, a part, not exceeding ten per cent., of which note shall be immediately paid for the purpose of discharging the incidental expenses of the institution, and the remainder of said deposit note shall be payable, in part or the whole, at any time when the directors shall deem the same requisite for the payment of losses or other expenses; and, at the expiration of the term of insurance, the said note or such part of the same as shall remain unpaid after deducting all losses and expenses accruing during said term shall be relinquished and given up to the signer thereof." Secs. 2, 3, 6. It also provides that every member shall be bound "to pay his proportion of losses and expenses happening or accruing in and to the class in which his property is embraced"; that, in case of loss or damage by fire happening to any member upon any prop-

erty insured in the company, such member shall give notice thereof in writing to the directors, &c., within thirty days of the time of such loss or damage, and that the directors shall ascertain and determine the amount of such loss or damage within ninety days after such notice, &c. ; that "all assessments shall be determined by the directors, and the sum to be paid by each member shall always be in proportion to the original amount of his deposit note of the class in which his property is embraced," &c. ; that, in certain cases of neglect by a member "to pay the sum assessed upon his note in conformity to this act, the directors may sue for and recover the whole amount of said deposit note, with costs of suit, and the money thus collected shall remain in the treasury of the company subject to the payment of such losses and expenses as have or may thereafter accrue, and the balance, if any remain, shall be returned to party from whom it was collected, on demand after thirty days from the expiration of the policy" ; that "the directors shall settle and pay all losses within three months after they shall have been notified as aforesaid," unless they elect to replace or repair the property, &c. ; that, upon the alienation of any property insured, the policy thereupon shall be void and shall be surrendered, and, upon such surrender, the insured shall be entitled to receive his note upon the payment of his proportion of all losses and expenses that have accrued prior to such surrender ; that, in case of the destruction of property insured by fire, "the directors may retain the amount of the premium note given for the insurance thereof, until the time for which such insurance was made shall have expired, and, at the expiration thereof, the insured shall have the right to demand and receive such part of said retained sum as has not been expended in losses or assessments." Secs. 7, 8, 9, 12, 13 and 14.

Under this charter and the by-laws established under it, the defendant was liable to assessment only for losses and expenses properly chargeable to the second class, in which his property was insured, accruing during the term mentioned in his policy. *Herkimer Company* v. *Fuller*, 14 Barb. 375 ; *Bangs* v. *Gray*, 15 Barb. 272 ; S. C. 2 Kernan, 482 ; *Tallmadge* v. *Rensselaer*, 21 Barb. 611 ; *Devendorf* v. *Beardsley*, 23 Barb. 663 ; *Ohio Company* v. *Marietta*, 3 Ohio State Rep. 350 ; *Brown* v. *Williams*, 28 Me. 254 ; and see *Swamscot Company* v. *Partridge*, 25 N. H. 373. The declaration accordingly avers that the directors "did settle and determine the sums to be paid by the several persons who were members in said second class of said company at the time when said losses happened and said expenses were incurred." The evidence fails to support this allegation or to show that the losses and expenses for which the defendant was assessed accrued during the term of his policy, for it merely tends to show that certain losses had occurred and certain expenses had accrued before the assessment. The evidence as to what was included in the assessment is by no means distinct ; but we understand it as showing that expenses and liabilities incurred long before the defendant became a member of the company were included in the assessment, and this seems admitted in the argument of the plaintiffs' counsel. An assessment including such expenses would be invalid as against the defendant. *Long Pond Company* v. *Houghton*, 6 Gray,

77.   The present case, therefore, differs from *N. E. Insurance Company* v. *Belknap*, 9 Cush. 140, and *Marblehead Company* v. *Allen*, 3 Gray, 210, where substantial accuracy in the assessments was held sufficient.

After the defendant's policy was issued, the company adopted the two by-laws numbered fourteen and fifteen.   These by-laws were offered by the plaintiffs and were, we think, properly rejected by the court.   The fifteenth by-law provides that notice of assessments shall be given by publication, &c.; "and by depositing in the post office at Great Falls, a like notice addressed to each person insured, at his place of residence as designated in his original application for insurance, at least thirty days before the time fixed for the payment of the same"; that "the certificate of the secretary, subscribed and sworn to before a justice of the peace, that an assessment was necessary and was duly and legally made by the directors, and a like certificate of the treasurer, that notice of an assessment has been given as required by the by-laws, shall be conclusive evidence of the facts, and shall be admitted and received as such in all trials and suits," &c., "instituted for the collection of assessments or to enforce the payment of premium notes, and no further or other evidence of loss, assessment or notice shall be required in any case whatever"; that, "when any person insured having been notified of an assessment, as required by the by-laws, shall neglect to pay such assessment for the space of thirty days after the time fixed and limited in the notice for the payment of the same, then his whole premium note shall become due and payable, and the directors may collect or cause the same to be collected, and, after deducting the assessments and all expenses attending the collecting of the same, shall hold the balance till the expiration of the policy," &c.   We are of opinion, that this by-law conflicts with the charter in several respects.   By the charter, the directors are to ascertain and determine the amount of losses, and to keep a record of their proceedings. Secs. 8 & 5.   Section nine requires that all assessments shall be determined by the directors, and that "the sum to be paid by each member shall always be in proportion to the original amount of his deposit note of the class in which his property is embraced"; and, by section seven, every member is bound "to pay his proportion of losses or expenses happening or accruing in and to the class in which his property is embraced."   Under the charter, a neglect by a member to pay his assessment for thirty days after actual notice, is necessary to entitle the company to recover the whole amount of his deposit note because of his neglect to pay an assessment, and in such case the company may recover the whole amount of the note with costs of suit, and the money thus collected is to remain in the treasury "subject to the payment of such losses and expenses as have or may thereafter accrue," and the balance, &c.   Sec. 9

The fourteenth by-law is as follows :   "The directors shall have power to borrow from time to time such sums of money as may be required to meet all losses, and may assess the sums thus borrowed, with interest thereon, and all necessary incidental expenses, upon the class or classes for which the money was borrowed ; provided, that, if from any cause sufficient funds to pay such borrowed money, interest and necessary in-

cidental expenses, shall not be collected on the assessments, the directors may make such further assessments as they may deem necessary for that purpose." If this by-law is to be construed as giving to the directors power to make assessments upon members for any sums for which they could not be assessed under the charter, it is void, at least so far as the rights of the defendant in the present suit are concerned. If it is not to be so construed, it is entirely immaterial to any question in the present case.

These by-laws were made after the defendant's contract was entered into, and there is no evidence of his assent to them, and if they are in conflict with the charter, and would in fact change and impair the defendant's rights under his contract, his assent will not be presumed. Angell & A. Corp. 338. It is unnecessary to inquire into the effect of the adoption of the additional act of incorporation by the plaintiffs after their contract with the defendant was made, for that act has no provision bearing upon any question material in the present case. There must be

*Judgment on the nonsuit.*