## SLATER MUTUAL FIRE INSURANCE COMPANY v. WILLIAM BARSTOW & CO.

The directors of a mutual fire insurance company, in assessing for losses upon its members, must not overlook the plain provisions of their charter, in a search for some rule of action more purely equitable.

The effect, in contemplation of law, of certain sections of a charter of a mutual insurance company declared.

THIS was an action of assumpsit, in which the plaintiff corporation sought to recover from the defendants the sum of $121.62, being the amount of assessments upon certain premium notes; and also a like sum as a forfeiture incurred by neglect to pay the sum assessed. The action was commenced in the Court of Common Pleas, when the plaintiff submitted to judgment and appealed to this Court. The issue made up was to a jury, but, by agreement of parties, the case was submitted to the Court upon fact and law.

The company was incorporated in 1856, with power to insure property of all kinds against fire, " on the mutual system," and for several years, prosecuted its business without embarrassments or litigation, the funds of the company being always sufficient to pay promptly all losses, without exercising the right and power of assessment upon the premium notes given by the holders of policies. Owing, however, to extraordinary losses, it at length became necessary to make an assessment upon those notes; and under the supervision of a new board of directors, an assessment was made upon all the notes held by the company, irrespective of the facts that the policies for which some of the notes were given had expired years before the date of the assessment, and that the individuals insured had, years before, ceased to be members of the company. The notes of the defendants were of this class,—one of their policies having expired three, and another four, years prior to the date of the assessment. To test the legality of this course of proceeding, on the part of the company, was the object of the suit.

The portions of the charter to which reference was made, at the Bar, were these :—

" In case any member shall sustain damage by fire, over and above the then existing fund of said corporation, the directors may assess such further sum or sums upon the deposit notes of the members as may be necessary to pay such loss. *Provided*, however, that no member, during the term of one year, shall be held to pay, by way of assessment, more than the full amount of such premium notes. But no member shall be liable for any assessment made to cover any loss which shall occur after the expiration of his policy.

" The said company may have a lien upon the property and buildings insured and the lots whereon the buildings stand, by stating, in the policy, their intention to claim such lien for security of the premium notes. And any member of said corporation who shall neglect or refuse to pay the amount which may be assessed upon the deposit notes, for the space of thirty days after demand shall have been made for the payment of the same, shall be liable to forfeit and pay a sum equal to the amount of his assessment, in addition thereto, and any party not paying such assessment and forfeiture in thirty days more, shall forfeit all benefit to be derived from his policy, and shall, moreover, be liable to the suit of the corporation therefor, in an action of the case, in any court of competent jurisdiction. * * *

" All persons whose property may be insured by said company shall be members thereof while their property continues so insured."

Of the fifteen by-laws of the company, the three following were referred to :—

" 13. *Cancelling Policies.* When buildings or other property insured shall be alienated by sale or otherwise, the insured may surrender his policy and receive back his deposit note if no unpaid assessment is due thereon, and the directors may order returned such portions of the previously paid premiums as they

shall deem equitably due, and if, from any cause, the company shall so elect, it shall be optional with the company to terminate the insurance after seven days' notice given to the insured or his representative of their intention to do so, in which case they will refund a ratable portion of the premium.

"14. *Payment of Losses.* Payment of losses shall be made in sixty days after the loss shall have been ascertained and proved, and proof satisfactory to the directors received at the office ; and in case differences shall arise touching any loss or damage, it may be submitted to the judgment of parties indifferently chosen, whose award in writing shall be binding on the parties.

"15. *Of the Funds.* The funds paid into the treasury shall be applied : First, to defray all necessary expenses. Second, to pay the losses insured against ; the balance, after reserving sufficient for re-insurance, shall be divided among the parties insured as their policies expire."

The only portion of the policy, to which reference is essential, was this, viz. : " *Be it known*, that the absolute and conditional funds of said company are hereby bound to make good, &c.,   *   *   *   * according to the provisions and subject to the conditions and limitations of the act of incorporation and by-laws of said company, all of which are hereto annexed."

*Thurston & Ripley, for the plaintiffs.*

*Tillinghast, with whom was Eames, for the defendants.*

BRADLEY, C. J.   The enquiry in this action is, as to the validity of an assessment made upon Mr. Barstow, the defendant, as a member of the plaintiff company.   That assessment is made pursuant to a certain plan which, it is said by the president of the company here, acting for the committee, assumes to apportion the losses that accrued, from time to time, upon those who were the members of the company by having policies with the company at the time each occurred.   It not only assumes that, but it assumes, beside making such separate classes, to revise and change the past action of the company in regard to that subject-matter.   For it appears that, heretofore, when a loss has

occurred, the officers of the company have paid the loss out of the funds they may have had in hand; and of course have applied to these losses the money they received as premiums upon the policies issued just prior to or at the time of such loss. It is an attempt to do what is considered by the parties, we suppose, the most exact equity; that each set of insurers should take the benefit and bear the burdens of the losses that arose during their particular term of relation to the company. But it is not for the officers of this company to assume to lay down rules as to what is equitable among the various members of these companies, or what would be equitable between the company and the policy holders. Our more simple and humble duty is, to ascertain what are the relations between these policy holders and the company, so far as they are defined in the charter of the company, the by-laws made pursuant to that charter, and the contract made between the policy holders and the company pursuant to such chartered rights.

It has been suggested that the method proposed has the better equity. Even upon that point the inquiry would be, which is the most practical method? A corporation is not a mere body of individuals forming a temporary partnership for a period of time. It has a continuing existence. It must carry on its business in a particular way. As a loss comes in, it must be met by the assets in hand at the time. You might say, it was more equitable if a merchant, carrying on his business, should pay the losses for each year out of the profits for that year, and not, as is more common, apply the property he receives from A to pay a debt he owes to B. There must be such a continuous and involved course of business even in private and partnership affairs; yet more in those of a corporation. It is also desirable that when a man has paid his premium, and the time of his policy has expired and he has left a company, that there should be an end of his relations to the company. It is expedient, in business as it is in litigation, that there should be an end of contracts and liabilities as well as an end of controversies. But the main ground of decision, aside from such general reasoning, is that the provision of the charter, both as amended and in its

original form, expressly provides that, in case any member should sustain damage by a fire exceeding the existing fund of the corporation, it may assess such further sum or sums upon the deposit notes of the members as may be necessary to pay such loss. So that the very condition upon which the right of assessment arises, is not only the occurrence of a loss, but the non-existence, at that time, of sufficient funds in the hands of the corporation to pay it.

Now, the plan adopted in this case ignores entirely the enquiry whether or no there is, at the occurrence of any particular loss, an existing fund, derived from premiums received by the corporation, sufficient to meet it ; and it contemplates a reservation of that fund, paid in from time to time, to be applied to those losses that may arise during the running of the policy from which the premium was derived.

Then there is another provision, also, in the same clause, that no member shall be liable for any assessment made to cover any loss which shall occur after the expiration of his policy ;—intending, of course, that after his policy has expired, he is to go out of the company and have no further liability.    Indeed, it is again expressly provided that he is to be a member of the company only while and so far as he is a holder of a policy.

We think it plain, that a member is liable to pay the assessment only according to the provisions of the contract itself; and that the contract is based upon, and pursuant to, and carries out the provisions of the charter.

There have been several attempts in this country, by the managers of insurance companies, to apportion losses in modes which they thought equitable.    Those attempts have always been met by the courts with the rule that every adjustment must be according to the terms of the charter and the contract.

In *Herkimer County Mutual Insurance Co.* v. *Fuller*, 14 Barb. 373, the company endeavored to do what they deemed equitable, and apportioned the assessment according to the length of time for which those policy holders had held policies.    There was an equity in that; but the court did not sustain that course. They decided that, under the charter, the company must appor-

tion the losses according to the amount of the policies and of the notes given for them.

There is a case in Ohio, also, where this question is made. *Ohio Mutual Insurance Co.* v. *Marietta Woollen Factory*, 3 Ohio, 348. And it is expressly held that cash funds must be first exhausted before they can resort to their assessment upon the premium notes. *Shaughnessy* v. *Rensselaer Insurance Co.* 21 Barb. 605, is more like the case at bar. In that case the premiums had been applied, as received, to the payment of losses as they occurred, just as they have been in this case. The court say : " The premiums had been expended in the payment of losses and expenses, and thus relieving former members from assessments upon their notes, and leaving others to be assessed for the payment of subsequent losses. There is no remedy for any injustice which may result from this mode of transacting the business of the company. It was authorized to make insurance both upon the mutual and the stock plan. The deposit notes were liable to assessment only when, after applying the funds of the company to the payment of losses, it should be found necessary. The effect of the system, undoubtedly, is, to cast a greater burden upon those whose notes should happen to be in force at the time the insolvency of the company occurs. But this was one of the risks which the parties took upon themselves at the time they engaged in the adventure."

The mode of adjustment, therefore, to be adopted must be in accordance with the terms of the original contract under the charter. This view seems to have been confirmed by the action of the company, not only during this long series of years, but also by the very provisions of their by-laws, which say, article 15 : " The funds paid into the treasury shall be applied, first, to pay all necessary expenses : second, to pay the losses. The balance shall be divided among the parties insured."

We do not consider it our duty, in this case, to lay down any specific directions as to how this company shall proceed, in the future, in regard to making assessments. We merely adjudicate that the mode pursued now, upon which this suit rests, was one which we cannot sustain, for the reasons which we have stated.