JOSEPH KELLY, Plaintiff in Error.

*vs.*

THE TROY FIRE INSURANCE COMPANY, Defendant in Error.

ERROR TO GREEN CIRCUIT COURT.

The Troy Fire Insurance Company for and in the transaction of its business, was divided into two departments, called the "Merchants" and "Farmers" departments, which were managed and kept separate and distinct from each other, neither being liable for the losses and expenses of the other. *Held:* that premium notes given in the one department or the other, are liable to assessment to pay the debts of the company; and that debts of the company which accrued from losses in either of the departments were the debts of the company and not of the departments respectively, though the company might be bound to apply the proceeds of assessments upon premium notes to the losses of the respective departments as prescribed by its charter and by-laws.

It is not essential that a loss by fire shall have occurred before an assessment upon premium notes can be lawfully made.

If an agent innocently makes a misrepresentation of facts while effecting a contract for his principal, it will not amount to fraud upon the part of the latter, if the principal, though aware of the real state of facts, was not cognizant of the misrepresentation being made, nor directed the agent to make it.

The principal is not responsible for any representations made by an agent in reference to matters not within the scope of his authority.

According to the practice of the courts in this State, the counsel who tries the cause is not confined, in the introduction of his evidence, to the statement which he makes in the opening of his case.

This case comes here by writ of error to the Green Circuit Court on a judgment rendered therein, in a case originally commenced before a justice of the peace.

Before the justice the parties appeared, when the plaintiff below, verbally declared against the defendant below, now plaintiff in error " on two premium notes, one No. 1213, dated October 18, 1851, of the

amount of $60 ; the other, No. 1313, dated Nov. 14,
1851, of the amount of four dollars ; on which pre-
mium notes there is claimed to be due the sum of
$48,16. The defendants pleaded the general issue,
and gave notice of set off, and filed bill of partic-
ulars for money had and received, amounting to
forty dollars. The plaintiff below obtained judgment.
The defendant appealed to the County Court, from
which the venue was changed to the Circuit Court,
where the cause was tried. The plaintiff obtained a
verdict upon which judgment was rendered. A num-
ber of exceptions were taken at the trial, both to the
admission of evidence, and to instructions to the jury
upon which errors are assigned.

On the trial in the Circuit Court, the plaintiff be-
low read in evidence the two premium notes declared
on, which were as follows :

" In merchants' department. For value received,
in policy No. 1213, dated the 18th day of October,
A. D. 1851, issued by the Troy Fire Insurance Com-
pany, I promise to pay to said company sixty dollars,
at such time or times and in such portions as the di-
rectors may, agreeably to their charter and by-laws
require.                    JOSEPH KELLY."

The premium note, application and survey were on
the same paper, the note below the application (for
insurance) on the same side—the survey was endorsed
on the back of the note and application. They were
printed forms, the blanks filled up by writing names,
numbers and dates suited to the parties and the oc-
casion. On the note were endorsed a cash premium
receipt for $30, and a memorandum of an insurance
in the Washington Mutual Insurance Company.
The four dollar note was like the foregoing in all res-

June Term
1854.

Kelly
vs.
Troy Ins.
Co.

pects except date, amount, and cash premium receipt, which was two dollars endorsed thereon.

The plaintiff below then offered in evidence the charter and by-laws of the company, portions of which were read in evidence, when the plaintiff produced a book which was proved to be. the record book of the resolutions of said company, and proposed to read therefrom in evidence two resolutions adopted at different times by said board of directors ; The first resolution, dated April 4th, 1852, as follows :

"*Resolved,* That the sum of three thousand dollars be assessed on the premium notes of the company, to pay the debts of the company."

The second resolution, dated February the 10th, 1853, as follows :

" *Resolved,* That the sum of thirty-three and one-third per cent. be assessed on the premium notes of the company, to pay the debts of the company."

The defendant objected to the reading of these resolutions, on the ground that the plaintiff ought first to show that there had been losses which ought to be paid ; and that the defendant was not liable to contribute to pay the debts mentioned in the resolutions. The circuit judge overruled the objection, and the defendant excepted. Testimony was also given of the amount due on the notes, and of demand of payment, and refusal, &c.

The defendant introduced evidence to show, that at the time when these premium notes were given by the defendant below, an agent of the .company, (the plaintiff below) by the name of Finch, requested the defendant to insure in the company ; that he objected, fearing the company was not good; that the agent told the defendant that they had a capital of $100,000

in premium notes ; that the company had cash premiums or cash capital to the amount of $40,000 ; that there would be no necessity for making assessments until their cash premiums or cash capital were exhausted in paying losses; that hand bills or placards of a similar import were posted up in bar-rooms and other public places in the town and vicinity, to the same import by the said Finch, agent &c ; that in consequence of such representations the defendant signed and delivered the notes; but that before he delivered the notes to the said agent he told him that he had the same property insured in the Jackson Mutual Insurance Company, and that that ought to be put in the application ; that Finch, the agent, replied that it would make no difference, he would fix it; upon which the said notes were delivered.

The defendants also proved by the secretary of the company that Finch, during the summer and fall of 1851 was the agent of the company *to receive applications and premium notes for insurance.* * * * * That the said notes had been received by mail by the secretary of said company, through the mail, from said Finch as agent. * * There was also evidence in relation to the conduct of other agents or reputed agents.

The defendant's counsel then read in evidence the charter and by-laws of the said company, which are sufficiently commented upon, in the opinion of the court.

It also appeared from the evidence, that in the transaction of the business of the company, it was di vided into two departments, to be managed and kept entirely distinct from each other.

There was other evidence, but not materially affec-

June Term 1854.

Kelly vs. Troy Ins. Co.

ting the case or the principles of law applicable to it. After the evidence was closed and counsel had been heard, the court below charged the jury as follows:

That the plaintiff had made out a *prima facie* case. The execution of the note being admitted, the assessment having been regularly made and the demand having been proved, that unless the defence was made out, they must find for the plaintiff. To which charge the defendant's counsel excepted. The court further charged the jury that the question of fraud was a question of fact, for the jury under the instructions of the court in the law as to what constituted a fraud that would avoid a contract; that if the jury was satisfied from the evidence that Finch was the agent of the plaintiff, and that he made any representations which were false in fact, in any matter relating to the substance of the contract, and which were known to be false by the officers of the company who authorized Finch to make them, the defence of fraud would be made out, although Finch would be innocent; but if Finch, the agent, made representations which the company did not authorize him to make, and if Finch believed them to be true, though false in fact, that the defence was not made out; that to constitute fraud to avoid a contract there must be moral as well as legal fraud; there must be more than mere mistake; there must be unfairness, that it must be inconsistent with honesty and fair dealing in all the parties. To which opinion and charge the counsel for the defendant excepted.

And the said counsel for the defendant asked the court to charge the jury, that if they believed from the evidence that the agent of such company, as such agent, to induce the defendant to sign said premium

note, represented and told the defendant that the company had a cash capital of forty thousand dollars or any other sum in cash, and that the defendant would not be assessed until said capital was used up in paying losses, and the jury find that said company had no such capital, that then on the note of sixty dollars they must find for the defendant. The court refused to give the charge, and told the jury that before they could find for the defendant on the state of facts last mentioned, they must further find that the agent or company had a guilty knowledge, that said representations were false at the time they were made. The defendant's counsel excepted.

June Term 1854.

Kelly vs. Troy Ins. Co.

The counsel for the defendant further asked the court to charge the jury that if they believed from the evidence that the agent, Finch, to induce the defendant to sign said premium notes represented and told the defendant that the company had a capital of one hundred thousand dollars in premium notes, and in consequence, when assessments were to be made they would be light, and the jury find that said representations were false, then they must find for the defendant. The court refused the instructions and said to the jury that before they could find for the defendant on the state of facts last above mentioned, they must further find that the agent or the company had a guilty knowledge that said representations were false. The counsel for the defendant excepted to such refusal.

The counsel for the defendant asked the court to further charge the jury that if they believed from the evidence that the agent of the company was furnished with blank forms and premium notes, and applications and surveys, and that it was usual for the

June Term
1854.

Kelly
vs.
Troy Ins.
Co.

agents to fill up said blanks, and that the by-laws of the company required the insured, if the same property was insured in another company, to insert that fact in the written application, and that the defendant requested the agent to insert an insurance in the Jackson Mutual Company ; and that said agent failed to do so, that then on said premium notes they must find for the defendant. The court refused the instructions, and said to the jury that they must not consider the evidence mentioned in the instructions last asked for by defendant's counsel. That the whole of said evidence had been ruled out upon the trial, for the reason that the defendant's counsel in stating his defence in his opening to the jury, stated that it was on the ground of fraud, and did not state any such ground as want of consideration, and he must be confined to his opening. That he would not be allowed to change his ground. The evidence if given would not avoid the policy so as to allow the defendant to avail himself of that defence upon the notice. The application was filled up by Finch, and he in doing so was either the agent of the company or the defendant—if of the plaintiff, they are bound by his acts and the policy is good—if of the defendant, his acts will bind him and he cannot set up a defence to the notes, grounded upon his own wrong or false representations. Therefore the evidence is wholly inadmissible for any such purpose, and was ruled out by the court, and is not a matter for the consideration of the jury at all. To which refusal and opinion the defendant's counsel excepted.

*Dunwiddie & Dexter*, for plaintiff in error.

*Wyman Spooner*, for defendant in error.

*By the Court*, WHITON, C. J. The errors assigned

in this case, are :

"1st, The court erred in admitting the resolutions of the board of directors of said insurance company to be used in evidence without laying a foundation whereby they assessed the premium notes of said company.

2nd, The court erred in charging the jury in this cause, that the plaintiff had made out a *prima facie* case.

3d, The court erred in charging the jury in this cause, that there must be moral guilt to avoid a contract.

4th, The court erred in charging the jury in this cause, that before they could find for the defendant, they must find that the agent (of) or the company had a guilty knowledge that said representation was false.

5th, The court erred in refusing the instructions asked for by defendant's counsel.

6th, There is error in this, that by the record in said cause the judgment aforesaid appears to be in favor of the Troy Fire Insurance Company; whereas it should have been in favor of said Kelly & Co.'

The reasons relied upon by the plaintiff in error, to show that the court below erred in admitting in evidence the resolutions of the board of directors, are, that by the charter and by-laws of the company, the company had two departments, which were to be managed and kept entirely distinct from each other; neither being liable for the losses and expenses of the other, and that, as the premium note which was read in evidence was given in the "merchant's department," it was erroneous to permit the plaintiff to show that an assessment had been made upon the

June Term
1854.

Kelly
vs.
Troy Ins.
Co.

premium note to pay the debts of the company, without showing that losses had occurred in the "merchant's department" of the company, and that consequently there were debts which the makers of the premium notes given in that department, were obliged to pay. It is further insisted by the plaintiff in error, that even if proof had been adduced to show such loss, and the consequent existence of a debt in that department of the company, still the evidence in question did not tend to show an assessment upon the premium note, to pay the debts of the "merchant's department," but of the company generally, and that this evidence could not in any event be admissible because the note in suit could not be assessed to pay any debt except in the particular department in which it was given.

We think the evidence was rightly admitted. The company, although it had two departments, was but one body. It had but one will, and could not act except in its corporate name. The *act of* ordering the assessment must therefore be done by the company.

It is equally clear that the debts which accrued from losses in either of the departments were the debts of the company, and that an assessment to pay such losses would be an assessment to pay the debts of the company. The company could not apply the proceeds of an assessment upon the premium notes in one department, to pay losses which had occurred in the other, but it could lawfully order an assessment upon the premium notes to pay its debts, taking care to apply the proceeds of the assessments according to its charter and by-laws.

Nor do we think it essential that a loss by fire

should have happened before an assessment upon the
premium notes could lawfully be made.

No company could transact business successfully, if after a loss had happened, provision must be made by an assessment upon premium notes to pay it. So much delay would unavoidably arise in paying losses that the company would be unable to fulfil its con. tracts.

The principal argument relied upon by the counsel for the plaintiff in error, to show that a loss by fire must have happened before an assessment could be made upon the premium notes, is founded upon the 21st section of the charter of the company, which is in these words: "Any member of this company, may at any time withdraw and receive the premium note, by paying his share for losses while the policy was in force; the policy to be surrendered with endorsed directions, to cancel."

It is said that if assessments are made upon the premium notes before losses have occurred, the persons who have given the notes cannot withdraw upon paying up their share for losses, because their money will be taken from them to pay the assessments, where no loss has happened.

We do not see as the section of the charter of the company above recited creates any difficulty. If, by a fair construction of it, those who have given premium notes are entitled to leave the company at any time upon paying only their share of the losses which have happened while they were insured, they would, of course, be entitled to receive back whatever they have paid above their just proportion.

We do not think the court committed any error in charging the jury that the plaintiff had made out

JUNE TERM
1854.

Kelly
vs.
Troy Ins.
Co.
a *pima facie* case. The making of the note being admitted, and there being no question made in regard to the assessment, (except as to its admissibility in evidence) on the demand, the court committed no error in charging the jury in the manner stated in the second assignment of errors.

The third error assigned is, that the court erred in charging the jury that there must be moral guilt to avoid a contract. This assignment of error has reference to the charge of the court, in regard to the alleged fraudulent representations of the agent of the company [Finch] in regard to the condition and resources of the company, and which the defendant contended avoided the contract.

The whole charge of the court upon that subject, as stated in the bill of exceptions, is as follows:

" That the question of fraud was a question of fact for the jury under the instructions of the court as to the law as to what constitued fraud, which will avoid a contract.

That if the jury were satisfied from the evidence that Finch was the agent of the plaintiff, and that he made any representations which were false in fact, in any matter relating to the substance of the contract, and which were known to be false by the officers of the company who authorized Finch to make them, the defence of fraud would be made out, although Finch, the agent, was innocent. But if the agent, Finch, made representations which the company did not authorize him to make, and which he believed to be true, even if false in fact, and the plaintiff had a knowledge at the time that they were false, the defence is not made out. That to constitute fraud to avoid a contract, there must be more than mistake—

there must be unfairness or deception somewhere—

that it must be inconsistent with honesty in all the parties."

We see nothing in this charge of the court which, when fairly considered, is liable to objection. The fact of an agent having innocently made a misrepresentation of facts while effecting a contract for his principal, will not amount to fraud on the part of the latter, if the principal, though aware of the real state of facts, was not cognizant of the misrepresentation being made, nor directed the agent to make it.

The errors assigned in the 4th assignment have been already considered, and it is not necessary further to notice them.

The fifth assignment of errors is that the court erred in refusing the instructions asked for by the defendant's counsel. The instructions asked for were as follows : "That if they [the jury] believed from the evidence that the said Joseph R. Finch was the agent of the company to receive applications for insurance, and that said agent was furnished with forms of premium notes, surveys and applications, that such an agency would necessarily authorize him to inform applicants, as such agent, how much and what kind of capital the company were in possession of, and that any representation that he might make as to the capital of said company, at the time of receiving said applications, would bind the company." The judge refused to charge the jury as requested, and the defendant excepted. We do not see any error in this refusal of the judge. Entrusting an agent with the blank forms for application for insurance, and also with forms of premium notes, and giving him power to receive applications for insurance, would not of necessity give

June Term
1854.

Kelly
vs.
Troy Ins.
Co.

him power to bind the company to the extent contended for. The judge, we think, took a correct view of the question. He left it to the jury to decide as a question of fact to be determined from all the evidence, whether the matter in question fell within the scope of the agent's authority.

The defendant further requested the court to instruct the jury " that if they believed from the evidence, that said agent as such agent, to induce said defendant to sign said premium notes and insure n said Troy Fire Insurance Company, represented and told the defendant that said company had a cash capital of forty thousand dollars, or any other sum in cash, and that on account of having said capital the defendant would not be assessed until said capital was used up in paying losses, and the jury find that the company had no such capital, they must find for the defendant. The judge refused so to instruct the jury, but told them ",that before they could find for the defendant upon the state of facts last above mentioned, they must further find that the agent or the company had a guilty knowledge that said representations were false at the time they were made." We see no errror in this instruction, or in the refusal to instruct, of which the defendant can complain. In the instruction which was given, it seems to be implied that the agent (Finch) had authority to bind the company, and that the company would be bound if he made the representations with a knowledge that they were false. We have already expressed the opinion that unless the jury were satisfied from the testimony that the act of the agent in question, was within the scope of the agent's authority, the company could not be affected by it.

The defendant further requested the judge to instruct the jury "that if they believed from the evidence, that the said agent, as such, represented to the defendant, that said company had a capital of one hundred thousand dollars in premium notes, to induce said defendant to sign said premium notes, in consequence, when assessments were made for losses, the assessments would be light, and the jury further find that said representations were false, then they must find for the defendant. The judge refused to give this instruction, but told the jury that they must further find that the agent or the company knew that the representations were false, or they could not on this account find for the defendant. It is manifest that the same observations apply to this, as to the preceding instructions, and we therefore leave it without further remark.

The defendant further requested the judge to charge the jury, "that if they believed from the evidence, that the agent of the company was furnished with approved blanks of premium notes and applications and surveys, and the by-laws of the company required applicants to insert the fact of being insured in another company in the written application, and that it was usual for the agents of the company to fill up blank applications, and that the defendant requested the agent to insert an insurance in the Jackson Mutual Company, and that said agent promised to insert said insurance in the Jackson Mutual Company in said defendant's application, and that said agent failed to do so, they must find for the defendant." This instruction the judge refused to give, but instructed the jury that the testimony which had been introduced tending to show that the agent had

promised to insert the fact in the application of the defendant, that he was insured in the Jackson Mutual Company, and had failed to do so, had been ruled out, and was not before the jury then. The reasons given by the judge why he ruled out the testimony were, 1st, that the counsel for defendant in stating his defence in his opening to the jury, stated that the action was defended on the ground of fraud, and did not propose to show any want of consideration for the notes, and that he must be confined to the defence stated in his opening, and could not be allowed to change his ground, and 2d, that the evidence if given, would not avoid the policy, so as to allow the defendant to avail himself of that defence. That the application was filled up by Finch—he was the agent in respect to that matter either of the plaintiff or the defendant. If of plaintiffs, they are bound by his acts, and the policy was good, and the notes were given for a good consideration. If he was the agent of the defendant, his acts will bind him, and he cannot set up a defence to the notes founded upon his own wrong. The evidence was therefore wholly immaterial, and was ruled out by the court and was not before the jury.

We are not prepared to say that according to the practice of the courts in this State, the counsel who tries the case is confined in the evidence which he introduces, to the statement which he makes at the opening of his case.

But we are satisfied that the exclusion of the evidence worked no wrong to the defendant, for the reason stated by the judge. We think it clear that if Finch acted in drawing the application as the agent of the company, and neglected to incorporate into it

a fact which was essential to the validity of the policy, when he had promised the defendant that he would do so, the company would be estopped to set up the omission, for the purpose of defeating an action brought on the policy; and if he did not act in that matter as the agent of the company, the evidence could not avail the defendant.

Upon the whole, we see no error, and must affirm the judgment.