ALLEN vs. WINNE.

ALLEN
v.
WINNE.

The directors of the Troy Mutual Fire Insurance Company, organized under chapter 232, General Laws of 1850, in pursuance of its charter divided the business of the company at the outset into two departments, called respectively the Farmers' and the Merchants' Department, and provided by by-law that the accounts of the two should be kept entirely distinct, and that no premium note should be assessed except for the payment of losses or expenses in the department to which it belonged. Afterwards citizens of another state, insured in the *Merchants'* Department, obtained a judgment on their policy in the United States Court for the district of Wisconsin, for the amount of a loss which occurred during the first year of the existence of the company, and upon filing a creditor's bill in that court, procured the appointment of a receiver to take charge of so much of the property of the company as should be sufficient to satisfy the judgment. The receiver made an assessment upon the notes in the *Farmers'* Department, and brought an action in a court of this state to recover the amount of his assessment upon a premium note in that department executed subsequently to said loss. *Held,* that the note sued upon could not be assessed to pay a loss in the *Merchants'* Department, and for this reason the defendant was entitled to judgment. DIXON, C. J., dissented.

Section 5 of said chapter 232, in effect provides, that no mutual insurance company, when dividends are not to be declared by it on earned premiums, shall commence business until agreements have been entered into for insurance, the premium notes on which shall amount to $5,000, and the notes shall have been secured therefor, &c.; said notes payable *when called for according to the charter or by-laws of the company,* to pay losses or expenses. Whether the charter and by-laws of such a company could lawfully provide that the notes given in the first instance to assist in forming the company, might be divided into classes, and each assessed only to pay losses in its own class, is discussed *per* COLE, J., but not decided, the note in this case having been given *after* the company was fully organized and engaged in business.

The governor of this state having certified, as provided by the act of 1850, that the charter of the Troy Mutual Fire Insurance Company filed in the office of the secretary of the state under the act, was consistent with the constitution and laws of the state, if the court should now hold said provisions of the charter relative to the division of the risks into two classes to be invalid because contrary to the policy of the law, it should further declare all contracts of insurance and premium notes to be void, which were given in the belief that such provisions were lawful. *Per* COLE, J.

Whether a creditor's bill against the corporation was a proper means for enforcing the collection of a judgment against it, either in the district court or in a state court, or whether the only remedy was a suit to sequestrate the property of the corporation for the benefit of all the creditors; whether the district court would have jurisdiction over a proceeding to sequestrate the property of a corporation organized under the laws of this state; and whether the receiver in this case, if properly appointed, could himself make assessments upon premium notes, or could only collect such as were made by the proper officers of the company—are questions not here determined.

ERROR to the Circuit Court for *Walworth* County.

An action was commenced in February, 1858, before a justice of the peace in Walworth county, by *Winne*, as receiver of the Troy Fire Insurance Company, to recover an assessment made by him upon a premium note executed by *Allen* to said company. The justice rendered judgment for the defendant; which, on an appeal to the circuit court, was reversed.

On the first hearing in this court, Justice PAINE did not sit; and upon a division of opinion between Chief Justice DIXON and Justice COLE, the judgment of the circuit court was sustained.

The facts of the case are stated in the following opinion, filed by Justice COLE, May 15, 1861.

*Winsor & Smith*, for plaintiffs in error.

*Wyman Spooner*, for defendant in error.

*By the Court*, COLE, J. The facts in this case are substantially as follows: *Winne* commenced an action before a justice of the peace of Walworth county, to recover an assessment made by him as receiver of the Troy Fire Insurance Company, upon a premium note given by *Allen* to the company on a policy of insurance. The company was organized under the provisions of chapter 232, Gen. Laws of 1850. The charter filed by the company in the office of the secretary of state, in pursuance of section 3 of the act, authorized the directors to divide applications for insurance into two or more classes, and provided that in case of such division, the premium notes should not be assessed for the payment of any loss, except in the class to which they belong. In pursuance of the charter, the directors, in the outset, divided the business of the company into two classes, one of which they named the "Farmer's Department," and the other the "Merchants' Department." Article 2, section 3 of by-laws of the company. They also provided that the accounts of each department should be kept entirely separate and distinct, and that no premium note should be assessed for the payment of any loss except in the class to which it belonged. Section 4 of by-laws. The premium note given by *Allen* was in the

"Farmers' Department," in which he was insured. All the property assigned to the receiver was in the Farmers' Department. The debts of the company at the time of the assignment, were $1600 or $1800 in the Farmers' Department, and $7000 or $8000 in the Merchants' Department. The amount of assets in the Farmers' Department, at the time of the assignment, was between $14,000 and $15,000 in premium notes, and $14,500 in stock notes only running for one year, the premium notes running from one to five years. Fitzpatrick and Van Alstine, citizens of Illinois, obtained a judgment in the United States district court against the insurance company, on a policy issued in the Merchants' Department, for a loss which occurred in that department in the first year of the existence of the company. They were insured for one year; their policy was issued previous to the 27th day of October, 1851, that being the time the company ceased issuing policies in that department. Fitzpatrick and Van Alstine, not being able to collect their judgment, filed a creditor's bill in the district court, and procured the appointment of the receiver, *Winne*, to take charge of so much of the property and effects of the company as should be sufficient to satisfy the judgment. *Winne*, as such receiver, made an assessment upon the premium note of *Allen*, and upon other notes in the Farmers' Department of the company, to pay this judgment; and the action was brought to recover this assessment. *Allen* obtained judgment before the justice, for costs; but the judgment was reversed by the circuit court. It is the correctness of this judgment of the circuit court we have now to consider.

A number of highly interesting and important questions arise upon the record, and were fully discussed upon the argument. It was insisted on the part of the plaintiff in error, that a creditor's bill against the corporation was not the proper remedy to enforce the collection of this judgment, either in the United States district court or in a state court, but that the only remedy in the case was a suit to sequestrate the property of the corporation for the benefit of all the creditors; and it is contended that the district court has no jurisdiction over a proceeding to sequestrate the property of the

corporation, it being organized and created by the laws of this state. It is further claimed that even if the United States district court could entertain jurisdiction of the creditor's bill filed to enforce the collection of the judgment against the corporation, and could appoint a receiver in that suit, still such receiver could not himself make assessments upon premium notes, but could only collect such as were made by the proper officers of the company. These questions, however, and others kindred to them, I shall not find it necessary to notice, because I think one objection, which goes to the foundation of the receiver's right to recover upon the pleadings and evidence, well taken, and this overrides all other questions. That objection is, that a premium note given in the Farmers' Department could not be assessed to pay a loss in the Merchants' Department.

By section 11 of chapter 232, under which the company was organized, the charter filed in the office of the secretary of state was to be examined by the governor, and if found to be in accordance with the requirements of the act and consistent with the constitution and laws of the state, the governor was to so certify to the secretary of state. This was done in the present case, the governor certifying that he had examined the charter and had found it to be in accordance with the requirements of the act and consistent with the laws and constitution of the state. The charter thus examined and certified to be correct, authorized the directors of the company to divide applications for insurance into two classes, according to the degree of hazard, and provided that the premium notes in such case should not be assessed for the payment of any loss except in the class to which they belong. Section 9 of the charter of the company. In furtherance of this system of transacting the business of the corporation, on its organization, by-laws 3 and 4, before referred to, were adopted; which also divided the risks into a Farmers' and Merchants' Department, and provided that the accounts of each department should be separate and distinct, and that no premium note should be assessed for the payment of any loss except in the class to which it should belong. While the general law conferred upon the corporators, trus-

tees or directors of any company organized under its provis-
ions, power to make such needful by-laws, not inconsistent
with the [constitution of the United States, or the consti-
tution or laws of this state, as to them might seem necessary
and expedient. Now, as before stated, *Allen* was insured in
the Farmers' Department; the note which he gave was for a
policy in that department, and was made payable in such
portions and at such times as the directors might, agreeably
to the charter and by-laws, require. So the contract made
by him with the company was not to pay absolutely the sum
mentioned in his note to meet all and any loss, nor to pay at the
discretion of the directors; but was merely and truly an un-
dertaking to pay to the extent of his note, in case such pay-
ment should be necessary to meet losses in the Farmers' De-
partment, and such expenses as were incident to the trans-
action of the business during the continuance of the company's
contract to insure him. This is obviously the nature, extent
and condition of his contract with the company, and noth-
ing more. This being so, with what reason or propriety can
it now be claimed that these conditions in the contract are
not to measure and fix the liability of *Allen*, but may be
wholly disregarded, and an assessment may be made upon
his note to pay a loss which he never agreed to pay? What
right has the court to override the agreement of parties sol-
emnly entered into, as clearly we must do when we say that
the proceeds of an assessment upon premium notes given in
one department, and to meet only losses in that department,
may be lawfully applied to pay losses in the other? It is an
axiom, that courts will enforce contracts according to their
terms and conditions, when such contracts are not contrary
to good morals, and contravene no principle of law or pub-
lic policy. Courts frequently have great difficulty in con-
struing contracts—in arriving at the true import of the lan-
guage used, and at the intent and meaning of the parties;
but when the intention is apparent, they are to be carried
out and enforced, unless some legal impediment intervenes
to prevent their execution. There is surely no room for
saying that the intention of the parties to this contract is not
clear and unmistakable. It is that the party insured in one

department agreed to pay his just proportion of all losses happening in that department, to the extent of his premium note, and the expenses of carrying on the business during the time the corresponding agreement to insure existed. The company was not to have any dealings in regard to insurance except with its own members. Each one of those members was to be insured, and to be indemnified, in case of loss, at the expense of those insuring in that department in which he was insured. A person insuring in the Merchants' Department agreed to look to his associates in that department in case of loss; while one insured in the Farmers' Department agreed to look to those in that department for indemnity. Each class agreed to meet the losses in its department, but not the losses in the other department. This is the general principle and plan of doing business in this company. If there is any difficulty in doing business upon this system—if it is found to be impracticable to work out this result, it is a matter for which the courts are not responsible. The parties have seen fit to enter into such contracts with these conditions, and the courts must enforce them as the parties have made them, if capable of being enforced. And if they cannot be carried out, the controversy must end for that reason. Now it is said, to sustain this mode of doing business would result practically in two corporations under one charter. But if this be so, what then? Is it not a sufficient answer to the objection, that the parties adopted this scheme of doing business; made their contracts of insurance with reference to it; agreed to look to a certain fund for the payment of losses; and became liable only for certain risks? They have so made their contracts—let them abide by their conditions. Fitzpatrick and Vanalstine have no right to call upon *Allen* to make good their loss. He never agreed to indemnify them. He made no such contract; and the court really makes one for him in holding him liable for that loss. Upon what grounds the court can thus enlarge, vary and extend the scope and meaning of contracts, I am at a loss to discover. It seems to me inequitable and improper to do it. And I deem it a sufficient answer to any supposed inconveniences in doing business upon this system of dividing the

January Term,
1862.

ALLEN
v.
WINNE.

risks into two classes, making those insured in one department responsible only for losses in that department, that the parties have seen fit to make such contracts, and I know of no principle of law or public policy which has been violated by them.

It is suggested that there is something in section 5 of the act under which the company was organized, which forbids the making of such contracts by the members of the corporation. The only part of that section which can have any bearing upon this case, is the latter clause, which, in effect, declares that no mutual insurance company, where dividends are not to be declared on earned premiums, shall commence business until agreements have been entered into for insurance, the premium notes on which shall amount to five thousand dollars, and the notes received therefor, and per centage paid—said notes payable when called for according to the charter or by-laws of the company, to pay losses and expenses; nor shall any company which may be organized under this act, expose itself to any loss on any one fire or inland navigation risk or hazard, to an amount exceeding ten per cent. of the capital. Now all this provision requires is, that premium notes to the amount of five thousand dollars shall be secured as a condition to the company's organizing and doing business. And even those notes were made *payable when called for according to the charter and by-laws of the company, to pay losses and expenses.* Whether it was competent for the directors to provide, in their charter and by-laws, that the notes given in the first instance, for the purpose of assisting in forming the company, might be divided, and assessed to pay only a certain class of losses to which they belonged, it is not material to inquire. I confess I see no solid objection to it, if the insured, who constitute the association, have a mind so to agree among themselves. But however this may be, *Allen's* note was not one of those notes. The policy of Fitzpatrick and Vanalstine in the Merchants' department, was issued for one year, and expired previous to the 27th day of October, 1852, almost a year before the note was given by *Allen.* In any view of the case, it cannot therefore be said that they had a right to

look to an assessment upon that note to pay their loss. For the note was not in existence until some time after that loss occurred. It was not, therefore, one of the stock notes mentioned in the case, but was given long after the company was organized; after the notes had been divided into two classes, and the directors had declared, both in the charter and by-laws, that notes given in one department should not be assessed to pay losses in the other. I discover nothing in this provision of the general law which forbids the making of these contracts, but the contrary. For it does not declare that the premium notes shall be absolutely payable to meet any and all losses, but that they shall be made payable according to the charter and by-laws of the company. Assuming that the intention of the 5th section was, that the company should always have actual securities in the way of premium notes to the amount of five thousand dollars, still the law does not prevent the company from dividing their risks into classes, and compelling the insured to look only to the fund which that class of risks in which they have been placed, produces, to indemnify them against loss. All persons insuring in the company became members of it, and what principle of law or public policy was violated in permitting them to make such arrangements in regard to the risks and payment of losses as might seem advantageous to them? The law, I think, properly leaves the whole matter to the control of the company, and I can see no possible objection to it. And in the case of *Kelley vs. Troy Fire Insurance Company*, 3 Wis., 254, Chief Justice WHITON must have considered the provisions in this charter and by-laws, touching a division of the risks of the company, and the fund to which the insured must look for indemnity, and held such provisions valid. For he says: "The company could not apply the proceeds of an assessment upon the premium notes in one department to pay losses which had occurred in the other, but could lawfully order an assessment upon the premium notes to pay its debts, taking care to apply the proceeds of the assessments according to its charter and by-laws." This very case solves the difficulty suggested by the counsel for the defend-

ant in error to this mode of transacting the business, namely,
that the debts which accrued for losses in either of the de-
partments, were debts of the company and not of the depart-
ments. Admitting this is so, still, by the express agreement
of the parties, these debts are to be paid out of a particular
fund devoted to that purpose. They are not to be paid ab-
solutely out of any funds, but only according to the provis-
ions of the charter and by-laws.

We were referred to the case of *Thomas v. Achilles*, 16
Barb. (S. C.), 491, where it is held that a mutual insurance
company organized under the general insurance act of April,
1859, of that state, had no right to divide its risks into two
classes, according to the degree of hazard, and to assess the
premium notes only for a loss happening in the class to
which such notes belong. Justice MARVIN thought such a
provision in the charter contrary to the policy of the law,
which intended that the company should possess $100,000
in premium notes, as capital stock, to meet any losses the
company might sustain. The counsel for the plaintiff in
error pointed out and commented on the very obvious dis-
tinction existing between the New York statute and the one
under which this company was organized. The New York
statute provided that the premium notes executed to the
company *should be deemed valid and should be negotiable and
collectable for the purpose of paying any losses which might ac-
crue.* 2 New York Rev. Stat., Banks & Bros.' Edition, p. 744,
Title 18, part 1, section 5 ; while by our law the notes were
payable when called for by the charter and by-laws of the
company. The distinction is material and important, and
would render the reasoning of Justice MARVIN, in *Thomas
vs. Achilles*, even if sound, inapplicable to the case at bar.
But still I am not prepared to adopt the doctrine of *Thomas
vs. Achilles* as sound law even under the New York statute.
For I am utterly unable to perceive how or in what manner the
policy of that statute would be contravened or violated by
permitting a mutual insurance company to divide its risks,
and make the premium notes liable only for a loss occurring
in the department in which they are placed. Suppose it is as-
sumed that such a provision of law was intended for the pro-

tection of the insured.   Cannot  the insured  protect them-
selves quite as well as the court, and can they not waive the
benefit which the statute affords them, by an express agree-
ment among  themselves to do so?   Can  they not agree to
look to a  particular  fund for pay in case  of loss, instead of
looking to the whole assets of  the  company?   If they can-
not make such agreements without  contravening  some sup-
posed policy of  the law, then the  law  has a policy too thin
and shadowy to meet my apprehension.

In the case  of *Savage vs.  Medbury*, 19 N.  Y., 32, it appears
that the charter and by-laws of  the Empire State Mutual In-
surance Company  contained  provisions for  different classes
of hazards, and that premium  notes should not be assessed
for any  losses except in the class to which  they  belonged.
And although  the validity of such a provision  was not di-
rectly  before the  court for  adjudication,  yet Chief Justice
JOHNSON, in alluding to this provision, with  others, throws
out no hint that he considered it invalid,  as contrary  to the
policy of  the  law of  that state,  but does, I  think,  assume
that it governs the rights  of the parties in the  special cases
to which it relates.  See also  *Waite vs. Haight*, 17 N. Y., 310.

I have placed no stress · upon the  fact that the governor,
by the 11th section of the act of 1850,  was to  examine the
charter and certify  that its provisions  were consistent with
the constitution and  laws of  the state.   That  was done in
this case.   The charter contained the provision  for dividing
the risks, and that the losses  should be met  by assessments
on the premium notes in each  class.   As the  company  was
organized and commenced doing  business on this plan,  the
insured relying upon the certificate of  the governor and the
legality of  the provisions in the charter,  were I now of the
opinion that those provisions were invalid  because they con-
travened the policy of  the  law, I should feel constrained to
also declare void all  contracts of insurance  and  premium
notes which · had been given  upon  the faith of such provis-
ions being lawful.   These premium notes were undoubtedly
given by the insured in consideration of the risk  which the
company assumed, and with the  distinct understanding that

they were only to meet one class of losses. They ought to be applied to this object or declared void for all purposes.

I think the judgment of the circuit court should be reversed, and that of the justice affirmed.

A rehearing having been granted, the cause was argued before the full bench.

*Winsor & Smith*, for plaintiff in error :

*Allen* is not liable to contribute to the satisfaction of the judgment, because his premium note belonged to the Farmers' Department, and the judgment was for a loss in the Merchants' Department. The New York general law under which *Thomas vs. Achilles*, 16 Barb., 497, arose, provided that no mutual insurance company in any county of the state, with certain exceptions, should commence business until agreements had been entered into for insurance, the premiums on which should amount to $100,000, and the notes received therefor, payable at the end of or within twelve months from the date thereof, *which notes should be considered a part of the capital stock, and should be deemed valid, and should be negotiable and collectable for the purpose of paying any losses which might occur or otherwise.* N. Y. Rev. Stat., 4th Ed., p. 1280, sec. 5; N. Y. Laws of 1849, chap. 308, sec. 5. Under this law, it is held by the courts of New York that the notes given on the organization of a mutual insurance company are capital stock, and payable absolutely. And the same courts hold further that the premium notes given to the company subsequently are only subject to the payment of actual losses and expenses, and cannot be collected until after a legal assessment for that purpose. *Devendorf vs. Beardsley*, 23 Barb., 656; *White vs. Haight*, 16 N. Y., 310; *Savage vs. Medbury*, 19 id., 32. In the case of *Thomas vs. Achilles* the court evidently failed to notice the distinction between these two classes of notes, and treated the subsequent premium notes as being, like the stock notes, devoted to the payment of *all losses*, without regard to the different departments. Nevertheless the distinction is very plain. Under the New York law the original notes are absolute promissory notes, intended to be so in form as well as sub-

January Term, 1862.

ALLEN v. WINNE.

tance, payable absolutely, transferable at pleasure from hand —to all intents capital stock, and not subject to assessment; while the premium notes given afterwards can only be collected after assessment pursuant to the charter and by-laws of the company. The case of *Thomas vs. Achilles* seems to be overruled by the other cases above cited, and by one in 21 Barb., 605. But if not overruled, it cannot settle the question under our general law, as to the liability of members of one department of a mutual insurance company to pay losses in other departments.

Under our law, the notes given on the organization of a company like the Troy Fire Insurance Company, are not different from the premium notes given afterwards. These original notes, it will be seen by reference to the law, are not made capital stock as they are in New York, nor are they to be made payable absolutely, nor negotiable, nor collectable for the payment of all losses or otherwise; but they are to be payable *when called for according to the charter and by-laws of the company, to pay losses and expenses.* The charter and by-laws of this company both provide that no premium note in one of the departments shall be assessed to pay any loss in the other department. *Allen,* who was insured in the Farmers' Department, cannot be called upon to contribute to pay a judgment for a loss in the Merchants' Department. The receiver, therefore, had no title to *Allen's* premium note. Title is the right to control, to use, to apply. There was no purpose for which the receiver could lawfully use or apply the proceeds of that note. He could not apply them to the judgment, because such application would be in direct violation of the contract itself, and of the charter and by-laws of the company; he could not apply them to any other purpose, because the judgment was the only claim against the property of the company over which the district court had acquired jurisdiction. The only right of that court to control the property of the company rested upon its authority to compel satisfaction of the judgment; consequently it could neither make nor authorize any application of such proceeds, except to satisfy the judgment.

*Wyman Spooner,* for defendant in error :

The receiver sues as an officer of the district court, which, in the exercise of its jurisdiction, has taken and appropriated *Allen's* note, together with other assets and credits of the company, to pay a debt existing in the form of a judgment against the company; not against a particular part or department of the company, but against the company as an entirety. On this judgment is the whole or only a part of the company liable? If only a part, how is that part to be ascertained, and by what proceedings can it be legally reached by the courts and compelled to satisfy the judgment? Could the district court, in confiscating the assets and collecting the credits of the company, and appointing a receiver to make the money to satisfy the judgment, go behind such judgment to ascertain the nature of the indebtedness on which it was founded, and what part of such company were, *by agreement among themselves*, liable on such original indebtedness, for the purpose of discriminating among the members and compelling a portion only to contribute to the payment of such judgment? And can this court, in this case, for a like purpose, go behind both the original judgment against the company and the decree of the court appointing a receiver to take possession of the assets and credits?

There is no other legal alternative than to adopt the ruling of this court in the case of *Kelly vs. The Troy Fire Insurance Company*, 3 Wis., 254, that the company is but one body, although it may within itself have different departments; that the judgment, from whatever cause arising, is the debt of, and a judgment against the whole company; that, under its charter and by-laws, the company might lawfully collect and assess all its premium notes, "taking care to apply the proceeds according to its charter and by-laws. The district court could not discriminate as to members or departments in its order requiring the company to assign its assets and credits, because the company held them as the assets and credits of the company as a corporation, a single body. And the same court, having become possessed of these, held them as the company held them, to pay the debts of the company, and being so possessed, could, through its receiver, do whatever the company might legally do in the collection, taking

January Term, the same care in applying the proceeds.  If there be any in-
    1862.    ternal question as to the comparative extent to which the in-
ALLEN      dividual members of the company may be liable, by he
  v.       rules of their compact, to contribute to the common fund,
WINNE.     and for what purpose, that must be determined by a special
           action brought for that purpose by one or more of the other
           members, and neither party, in such action, can stand as the
           corporation.

Allen's note is a promise to pay *the corporation*—not any de-
partment or portion of it—a certain sum, without condition
or limitation, except that such sum shall be paid in such por-
tions and at such times as the directors may require, agree-
ably to their charter and by-laws.  Now the charter and by-
laws require no loss *previous* to assessment or demand of
payment, nor even that there shall be an indebtedness exist-
ing at the time of assessment, which is, in effect, only a de-
mand of a payment of a part of the sum specified ; and there
is no requisition that the assessment or demand shall extend
beyond the individual note.  Suppose then there were an
understanding, or even an express agreement, that the money
to be assessed and collected on *Allen's* premium note should
be applied in a particular way or to a particular purpose,
(and this is the most that can be made even by construction
or intention out of the charter and by-laws of the company,)
and the directors proceed to require *Allen* to pay a certain
portion of the whole, with or without the avowed purpose to
pay the debts of the company.  Could *Allen* set up the agree-
ment by way of defense against the payment?  And could
the court, in an action to enforce payment, in anticipation
that the directors would or might misapply the proceeds
when collected, let in an inquiry as to what the directors
might possibly do with the money, after it was collected,
contrary to their declared purpose to pay the debts of the com-
pany?  Certainly not ; because this court has already de-
clared (in the case of *Kelly vs. The Troy Fire Insurance Co.*),
that the premium notes may be indiscriminately collected at
the will of the directors, for the purpose of paying debts
and expenses—losses or no losses, debts or no debts.  In
this case the district court has assumed to stand in the place

of the company and of its directors, and acting through its receiver, to take possession of *Allen's* note, to make an assessment upon it, and to sue for the collection of the amount of such assessment, for the declared purpose of paying a debt and satisfying a judgment against the company. Can this court, by any legitimate and proper course of legal proceedings, in the trial of this action, be made cognizant of the fact that this money, when collected, may be misapplied, and therefore refuse a judgment for its recovery ? Such a question can only be tried in an action commenced specially for the purpose (in which *Allen* or some other aggrieved member or members must be complainant, and the directors, or in this case the receiver, defendant), to compel the proper application of the money when collected. See Willard's Equity, p. 151.

As to the attempt to discriminate and explain the opinion in *Kelly vs. The Troy Fire Ins. Co.*, by assuming that it did not apply except in cases where the object is to carry on the business of the company, and that the receiver has no authority to do this, it is sufficient to say, that in justice and equity, the making of assessments to pay debts already existing is quite as necessary as the providing for future indebtedness, and quite as essential to the successful prosecution of business.

*Winsor & Smith*, in reply :

We admit that the district court has attempted to appropriate *Allen's* note to pay the judgment in favor of Fitzpatrick and Van Alstine. We further admit that the judgment is a debt against the company *as an entirety*—that is, against the corporation. But it is not a debt against the members of the company in their individual capacity. We admit that the property of the company is liable. But we deny that the liability of any person whatever upon a contract with the company (whether such person is a member of the company or not), is affected by the facts so admitted. And we deny that the liability upon such contract is any greater in consequence of the fact that the action is brought by a receiver. *Williams vs. Lakely*, 15 How. Pr. R., 206 ; *Savage vs. Medbury*, 19 N. Y., 32. If the company could

not assess *Allen's* note to pay the loss of Fitzpatrick and Van Alstine, the receiver could not. The order of the district court could not give validity to such appropriation. " The court could not change the contract." 15 How. Pr. R., 209. The question presented is, " Is *Allen* liable by his contract, as controlled by the charter and by-laws of the company (to which it refers), to pay anything for the purpose for which it is demanded by the receiver?" This question has no connection with the question whether the company is but one body, or whether all its property is liable for the payment of all its debts. The receiver's title to the note is not the general title, but a special one, founded upon the judgment in the suit wherein he is receiver. His title cannot be greater than that of Fitzpatrick and Van Alstine, for whom he acts as legal trustee. If it could, it is for him to show the further facts on which such title rests, before he can recover.

The counsel for the parties argued several other questions at length; but as the questions were not passed upon by the court, the argument is here omitted.

May 15. *By the Court,* PAINE, J. Upon the first argument in this case I did not sit, and took no part in the decision, for the reason that I then supposed that I had once been employed as counsel. The facts were, that I was once employed as counsel by an agent of a number of parties interested in the questions involved in this case, and on the former hearing I supposed the plaintiff in error was one of them.

A rehearing was asked for upon affidavits showing that such was not the fact, and it was granted, the whole court deeming it my duty to act in the case.

I deem it necessary only to say that I concur in the views already expressed in the opinion of Justice COLE, the result being that the judgment is reversed, with costs.