## Miner vs. The Phœnix Insurance Company.

FIRE INSURANCE—AGENT—WAIVER: (1.) *Power of agent to waive a condition in the policy.* (2.) *What constitutes such waiver.*

1. An agent of an insurance company who is authorized to take risks and issue policies for the company, may *waive* a condition in the policy, to the effect that any change in the title or possession of the property insured shall render the policy void.
2. Where the agent, with a full knowledge of the fact that such a change of title or possession has occurred, receives a premium and issues a renewal receipt, this constitutes a *waiver* of such condition.
3. Where such change did not affect the insurable interest of the parties for whose benefit the policy was taken (mortgagees, who purchased on foreclosure of their mortgages), they were entitled to recover the full amount of the loss, so far as covered by the policy.

APPEAL from the Circuit Court for *Walworth* County.

On the 7th of November, 1866, the defendant company, by one Bulkley, its local agent at Elkhorn, in this state, issued a policy of insurance for one year from that date upon certain property in said village of Elkhorn. The policy states that the company thereby

" do insure Robert Richmond, of La Fayette, against loss or damage by fire to the amount of $800 ;" and after describing the property, adds : " Loss, if any, payable to H. C. Wylie and *N. Miner*, mortgagees." The policy contained the following among other conditions: " If the property be sold or transferred, or any change take place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, or if this policy shall be assigned either before or after a loss without the consent of the company indorsed thereon, or if the interest of the assured, whether as owner, mortgagee or otherwise, is not truly stated in this policy, * * * then and in every such case this policy shall be void." At the date mentioned, Richmond held the legal title to the property insured, and *Mr. Miner* and Mr. Wylie held two mortgages upon it to an amount exceeding $800. In the spring of 1867, these mortgages were foreclosed and the premises purchased at the foreclosure sale by *Mr. Miner*, and conveyed to him by the sheriff. In October, 1867, *Miner* mortgaged the premises to Wylie for $405.56. On the 7th of November, 1867, Wylie paid the amount of premium for another year, and received a renewal receipt, which stated that the money was " received of Robert Richmond *per* H. C. Wylie," etc. On the 1st of July, 1868, the property was damaged by fire, to the amount, as the complaint alleges, of $475, and, Wylie having assigned his claim upon the policy to *Miner*, the latter brought this action upon said policy for said sum of $475.

The plaintiff alleged in the complaint, and introduced evidence to show, that at the time of said renewal, Bulkley, the defendant's said agent, was informed of the change which had occurred in the title to the property, and of the interests which *Miner* and Wylie respectively had therein at that time, and that he assured them that a renewal of the former policy would have the same effect as the issue of a new policy to

them, and such renewal was accepted upon that assurance. The defendant denied this averment, and introduced evidence in support of the denial. The court directed the jury to find a special verdict upon the question whether Mr. Bulkley, when he renewed the policy, knew that the legal title to the property had passed from Richmond to the plaintiff; and the jury having answered this question affirmatively, the court directed them to find, and they did find, a general verdict for the plaintiff for the amount claimed. A new trial was denied, and a judgment entered on the verdict; and the defendant appealed.

*Spooner & Harkness*, for appellant, contended that this was simply an attempt to convert, by parol evidence, a contract to insure Richmond for the benefit of Wylie and *Miner*, mortgagees, into a contract to insure *Miner alone as owner*, and that the rule that parol evidence is not admissible to vary written contracts, nor to show what the parties intended, and that all contemporaneous conversations are merged, is applicable to insurance policies as well as to other written contracts. Angell on Ins., secs. 20–23, and cases cited; Phillips on Ins., sec. 120, and cases cited; 1 Johns. 433; 2 id. 346; 4 Hill, 329; 2 Denio, 75; 17 N. Y. 194, and case in note on 199; 23 id. 516, 519, 520, and cases cited. Counsel then examined and distinguished at length the cases cited for the plaintiff.

*H. F. Smith*, for respondent.

DIXON, C. J. The policy sued upon contained the usual condition found in such instruments, that " if the property be sold or transferred, or any change take place in title or possession, whether by legal process or judicial decree, or voluntary transfer or conveyance, * * * then * * * this policy shall be void ;" and the sole question in this case is, whether the agent of the company was authorized to waive and did waive this condition, by accepting the

premium and issuing and delivering the renewal receipt with knowledge at the time that the property had been sold and the title changed.

The premium was paid to, and the renewal receipt made and delivered by, George Bulkley, at Elkhorn, on the 7th of November, 1867. Bulkley subscribed his name thereto as agent. The complaint avers that Bulkley "was then said defendant's local agent at Elkhorn aforesaid, and was duly authorized to issue and renew policies of insurance and to receive the premiums therefor in behalf of the defendant." This averment of the complaint is not denied by the answer, and of course stands admitted.

The court submitted the following question to the jury, upon which to find a special verdict, namely: "Did Mr. Bulkley, the agent of the defendant, when he renewed the policy in question, November 7, 1867, know that the legal title to the property therein mentioned had passed from Richmond to the plaintiff?" To this special question the jury answered, "Yes;" and thereupon the court directed a general verdict for the plaintiff for the amount of damages proved.

The policy renewed was issued to one Richmond as owner of the property, the loss, if any, payable to the plaintiff and one Wylie, mortgagees. The renewal receipt ran to Richmond, showing the premium to have been received of him *per* Wylie, thus continuing the policy in the same form—Richmond insured as owner, and loss payable to plaintiff and Wylie, mortgagees. Before the renewal, Richmond's title had been extinguished by foreclosure, and the plaintiff and Wylie had become owners. They had purchased at the foreclosure sale upon the mortgages given to themselves. After the loss by fire, Wylie assigned his interest in the policy to the plaintiff, who sues alone, and is entitled to the proceeds.

It will be seen from this statement, that there was a verbal inaccuracy in the question submitted to the

jury. Instead of submitting to them whether Bulkley knew the legal title of the property had passed from Richmond to the plaintiff, the submission should have been, whether he knew it had passed from Richmond to the plaintiff and Wylie. The inaccuracy is, however, of no importance, and is alluded to only for the purpose of explanation. It is very clear that the jury could not have misapprehended the question submitted, or intended to be, which was, whether the agent knew the title had passed from Richmond to the plaintiff and Wylie.

The question thus submitted to the jury very much narrowed the issue presented by the pleadings and evidence before the court. It withdrew entirely from the consideration of the jury all that part of the case and the testimony respecting the alleged statements and representations of the agent made to Wylie at the time of renewal and when the premium was paid by Wylie, that the change of title made no difference; that the policy as renewed was as valid and effectual to insure the interest of the plaintiff and Wylie as owners as a new policy would be, issued to them in that capacity; and that no new policy was necessary. All that part of the case was withdrawn, and the only question of law which remained and now remains is that above stated. It is, whether the agent was authorized to waive and did waive the condition by receiving the premium and executing and delivering the renewal receipt, knowing the change of title which had taken place.

The agent, as admitted by the pleadings, was authorized to issue and renew policies of insurance, and to receive premiums therefor in behalf of the company, at Elkhorn. He was, therefore, the general agent of the company, authorized to represent it, make contracts for insurance and transact its business at that place, according to the general practice and course of dealing of such corporations. He was authorized to make and

did make the contract of insurance in question; for it was expressly provided by the policy that it should "not be valid unless countersigned by the duly authorized agent of said Phœnix Insurance Company at Elkhorn, Wis." The strong tendency and decided weight of all modern authority is, that agents so authorized and appointed may waive any of the written or printed conditions of the policy, and bind the company by such waiver; and that their representations or statements made, or promise, assurance or verbal consent given, to the assured at the time of issuing the policy, or when acting within the scope of their agency and with knowledge of the facts constituting the breach, will, if confided in and relied upon by the assured, who is himself innocent and makes no misrepresentation or intentionally conceals nothing, amount to such waiver and estop the company from taking advantage of the condition waived. The cases in which this doctrine has been held are very numerous. In *Viele v. Germania Insurance Co.*, 26 Iowa, 9, it was held that a condition in a policy of fire insurance, that, if the risk be increased by a change of occupation or other means within the control of the assured, without the *written* consent of the insurers, "the policy shall be void," might be waived *without writing*, and by any acts, declarations, or course of dealing by a local agent of the insurers, authorized, as here, to issue and renew policies and make contracts of insurance, and who, with knowledge of the facts constituting a breach of the condition, recognized and treated the policy as valid, and led the assured to regard himself as protected thereby. In that case the agent was authorized to determine whether the risk was increased, and to cancel the policy on account thereof; and the waiver was after the policy was issued, and not by acts or declarations at the time of its issue or renewal. It was held that no new consideration was necessary to support such waiver. At page 58, the court say: "It is

difficult to conceive of an act in the prosecution of the business of insurance, which the officers of the companies can do, that cannot be done by the agent."

In *Franklin v. The Atlantic Fire Ins. Co.*, 42 Mo. 456, it was held that a condition in a policy, " if the interest of the assured in the property be other than the entire, unconditional and sole ownership of the property, for the use and benefit of the assured, it must be so represented to the company and so expressed in the written part of the policy, otherwise the policy would be void," was waived, and the company estopped, where the agent, before issuing the policy or receiving the premium, and having notice from the assured that his interest in the property was not entire, unconditional and sole, and that there were incumbrances upon it, failed to express those facts in the policy prepared by himself, and delivered it to the assured, saying that " it made no difference ; it was all right," or words to that effect, and received the premium. In that case the doctrine is affirmed, that foreign insurance companies are bound by the acts of their agents, acting within the scope of their general authority, without any immediate knowledge of the transaction on the part of the company.

In *Columbia Insurance Co. v. Cooper*, 50 Pa. St. 331, the assured innocently represented that there were no incumbrances upon the property, which was machinery in a mill, but stated the facts that there were judgments on the land, which he did not think were liens on the personal property ; and in this the agent concurred, and returned to the company the application with the answer that there were no incumbrances, but that the premises were leased. The court observed, whether a particular piece of real estate is subject to the lien of judgments, and whether chattels are so connected with that real estate as to be part of the freehold, were questions which the assured did not profess to be able to answer, and which, if the com-

pany wanted answered, they should have sent a competent agent to investigate. They furthermore said that the assured was not responsible for the blunders of the agent. If the agent returned that there were no incumbrances, when he had been informed there were judgments and a lease, he may have violated the 'conditions;' but no company has a right to select and send out agents to solicit patronage and business for its benefit, and then to saddle their blunders upon its customers."

And equally strong and decisive is the language of the court in *N. E. Fire & M. Ins. Co. v. Schettler*, 38 Ill. 166, where it was held that an agent, having power to receive premiums, would be presumed to have authority to give permission to the holder of a policy to remove the property insured to another locality; and he having indorsed the consent in writing on the policy, for an enhanced premium, for the removal, the company was bound by it.

And so in *Peoria Marine and Fire Ins. Co. v. Hall*, 12 Mich. 202, where by a fire policy it was provided that the keeping of gunpowder " without written permission in the policy " should render it void, it was held that the agent taking the insurance might waive it without writing, and whether permission to keep it was indorsed, or intended or neglected to be indorsed, or not.

And the power of these agents, and the extent to which they represent and may bind the companies, is further shown by those cases in which it has been determined that the company cannot avail itself of any misstatement or omission in the application constituting a warranty on the part of the assured, where such application is prepared by the agent with knowledge of the facts, or he is intrusted by the assured to make the application, and that this is so even though the by-laws of the company, made known to the assured, provide that the person taking the survey and prepar-

ing the application shall be the agent of the applicant. *Clark v. Union Mutual Ins. Co.*, 40 N. H. 333 ; *Masters v. Madison County Mutual Ins. Co.*, 11 Barb. 624 ; *Rowley v. The Empire Ins. Co.*, 36 N. Y. 550 ; *Protection Ins. Co. v. Harmer*, 2 Ohio St. 452 ; *Beal v. The Park Fire Ins. Co.*, 16 Wis. 241 ; *Hough v. City Fire Ins Co.*, 29 Conn. 10 ; *Kelley v. Troy Fire Ins. Co.*, 3 Wis. 268, 269 ; *Howard Fire Ins. Co. v. Bruner*, 23 Pa. St. 50 ; *Ames v. N. Y. Union Ins. Co.*, 14 N. Y. 253 ; *Plumb v. Cattaraugus Ins. Co.*, 18 N. Y. 392 ; *May v. The Buckeye Mutual Ins. Co.*, 25 Wis. 291. In such cases the neglect or mistakes of the agent are the neglect or mistakes of the company itself.

And the authority of a general agent is still further illustrated by those cases adjudging that the receipt of premium upon a policy by the agent after forfeiture or breach of condition and with knowledge thereof, is a waiver (*Wing v. Harvey*, 27 Eng. Law and Eq. R. 140 ; *North Berwick Co. v. N. England F. and M. Ins. Co.*, 52 Maine, 336) ; or the doing of any other act by the agent recognizing the policy as still in force and valid (*Keeler v. Niagara Fire Ins. Co.*, 16 Wis. 523) ; or that the agent may waive the printed condition that no policy shall be considered binding until the premium is paid, and give a credit (*Borhen v. Williamsburg Ins. Co.*, 35 N. Y. 131 ; *Sheldon v. The Atlantic F. and M. Ins. Co.*, 26 N. Y. 460 ; *Gait v. National Protection Ins. Co.*, 25 Barb. 189) ; or that he may bind the company by a parol agreement to renew, although the policy and the certificates of renewal declare that they shall not be valid until countersigned by the agent, and that it makes no difference that at the time of such agreement to renew the period for which the policy was issued had expired (*Post v. Ætna Ins. Co.*, 43 Barb. 351) ; or that he may waive notice of additional insurance, where the policy requires that the assured shall give notice thereof to the company and have the same indorsed on the policy or otherwise acknowledged

by the company in writing (*Warner v. Peoria M. and F. Ins. Co.*, 14 Wis. 318); or that he may bind the company by new clauses or conditions inserted by him before issuing the policy (*Gloucester Manuf. Co. v. Howard Fire Ins. Co.*, 5 Gray, 497).

To the authorities thus referred to, many others, differing in facts, but not in principle, might be added; but it becomes tedious and unnecessary. Enough have been cited to show that it was competent for the agent in this case to waive the condition that any change in title or possession should render the policy void; and it only remains to be determined, whether he did so waive it by receiving the premium and giving the renewal receipt, knowing that such change had taken place.

The case of *Peoria Marine and Fire Ins. Co. v. Hall*, 12 Mich. 214, broadly asserts the doctrine, that mere knowledge by the agent issuing the policy or renewing it and receiving the premium, of facts constituting a breach of any of its conditions, is a waiver by him and by the company of the condition so known to be broken. It is put upon the ground that notice to the agent is notice to the principal, and that whatever the agent knows the company must be regarded as knowing; and that, as it would be a gross fraud for the company knowingly to receive the premium for issuing a policy on which they did not intend to be liable, and which they intended to treat as void in case of loss, so it is equally a fraud, and their fraud, for their agent to do so; for his knowledge was their knowledge, and his acts their acts, for all the purposes of the transaction. And the same doctrine is fully sustained by the following cases: *Campbell v. The Merchants' and Farmers' M. Fire Ins. Co.*, 37 N. H. 35; *Marshall v. Columbian Mut. Fire Ins. Co.*, 7 Foster, 157; *Masters v. Madison County Mut. Ins. Co.*, 11 Barb. 624. In 37 N. H. 48, it is said that the applicant, unused to the business and ignorant of what is necessary to be done, trusts to the skill, knowl-

edge, and judgment of the agent, and puts full confidence in and relies upon him to see that the business is correctly done, and, if he acts honestly and in good faith, the company ought to be charged with a knowledge of all the facts that are known to the agent; that it would be unjust to the insured, after he has made the application, and paid the premium demanded and the expenses of the policy, to permit the company, upon the destruction of the property, to say that they will not make good the loss, because their agent, whom they have authorized to act for them, has failed in the performance of his duty ; and that as the agent knows the requirements of the company and the insured does not, if the application or policy be defective, upon a point well-known to the agent, the company, and not the insured, should be the sufferers.

We are well satisfied of the soundness of these decisions and of the reasons which are given for them, and must, therefore, hold that the condition in question was waived when the agent accepted the premium and issued the renewal receipt, knowing the change of title which had been made ; and that, as such change did not affect the insurable interest of the parties for whose benefit the policy was issued, and who paid the premium, the recovery in this action must be affirmed.

*By the Court.*—Judgment affirmed.

Lyon, J., took no part in the decision of this appeal, having tried the cause at the circuit.